R. KENNEDY HARRIS, Receiver of PHILLIPS-BOLLING LUMBER COMPANY, v. D. B. HILLIARD and R. G. HANCOCK.

(Filed 20 May, 1942.)

1. **Receivers § 13—Receiver of partnership may maintain action existing in favor of partnership without allegation that partnership is insolvent.**

Plaintiff, the receiver of a partnership, instituted this action upon allegations that defendant mortgagees foreclosed chattel mortgages executed by the partnership and purchased the partnership property through an agent at their own foreclosure sale. The receiver was authorized and directed by the court to bring the action. *Held:* The action was one which could have been maintained by the partners had a receiver not been appointed, and therefore the receiver can maintain the action without allegation of insolvency of the partnership, since a receiver may be appointed for reasons other than insolvency. C. S., 1208, 1209 (3), 860.

2. **Chattel Mortgages § 20a: Mortgages § 35a—**

A mortgagee cannot purchase at his own sale, either directly or indirectly through an agent, as a matter of public policy, and the mortgagor may attack the sale or sue for damages sustained by reason of the sale without allegation of fraud.

3. Same—

In this action to recover damages upon allegations that defendants mortgagees purchased the property at their own foreclosure sale through an agent, the evidence *is held* sufficient to be submitted to the jury on the question of whether the purchaser at the sale was a *bona fide* purchaser for value or whether she was an agent of defendant mortgagees and merely permitted the use of her name as purchaser for the convenience and benefit of defendants.

APPEAL by plaintiff from *Warlick, J.,* at February Term, 1942, of GUILFORD.

Civil action brought by R. Kennedy Harris, receiver of the Phillips-Bolling Lumber Company, a partnership, to recover of the defendants damages alleged to have been suffered by the partnership on account of the wrongful and unlawful foreclosure of certain personal property under two chattel mortgages executed by said partnership to the defendants.

The plaintiff was duly appointed receiver of Phillips-Bolling Lumber Company and was authorized and directed to bring this suit.

On 28 November, 1939, the Phillips-Bolling Lumber Company executed two chattel mortgages on all the machinery and physical equipment, including office furniture and fixtures, of the partnership to the defendants to indemnify the said defendants against loss by reason of having endorsed a note of the partnership of even date to the Chatham Bank, in the sum of $4,100.00.

It is admitted that on 28 October, 1940, there was due on the note secured by said chattel mortgages the sum of $3,400.00, and that by reason of default in the payment of said note, the chattel mortgages were foreclosed on 13 November, 1940, and Ruth S. Dixon became the last and highest bidder for said property. The plaintiff alleges that Ruth S. Dixon was the agent of the defendants, she being the wife of L. P. Dixon, the attorney who conducted the foreclosure sale for the defendants and one of the partners of Dixie Lumber Company. Plaintiff alleges that immediately after said foreclosure sale the defendants took possession of the property and used the same in their business, known as the Dixie Lumber Company, which was a partnership consisting of R. G. Hancock, D. B. Hilliard and L. P. Dixon. That two days after the foreclosure sale the defendants entered into negotiations for the sale of the property, which negotiations were consummated and bills of sale executed to the purchaser, D. B. Pegram, on 21 November, 1940, for a consideration of $6,800.00; and the entire consideration has been paid to the defendants. Plaintiff introduced in evidence the chattel mortgages and the bills of sale executed by R. G. Hancock, D. B. Hilliard, L. P. Dixon and Ruth S. Dixon, and an agreement executed by R. G. Hancock, D. B. Hilliard and

L. P. Dixon, trading as Dixie Lumber Company, to indemnify and save harmless D. B. Pegram from any claims, debts or liabilities arising from or out of notes, mortgages, etc., executed by Phillips-Bolling Lumber Company to certain creditors of said company.

The purchaser of the property, D. B. Pegram, testified that about the middle of November, 1940, he went to see Mr. Hancock, one of the defendants, and inquired as to whether or not he had purchased the foreclosed property of the Phillips-Bolling Lumber Company, and that Mr. Hancock informed him that he and Mr. Hilliard had purchased the property. Mr. Pegram testified further that he had never seen Mrs. Dixon and that the bills of sale had been delivered to him by Mr. Hilliard and Mr. Dixon.

Other evidence was offered as to the value of the property at the time of the aforesaid sale.

At the close of plaintiff's evidence, the defendants moved for judgment as of nonsuit, which was allowed. Plaintiff appeals and assigns error.

*Hoyle & Hoyle for plaintiff.*
*C. L. Shuping and L. P. Dixon for defendants.*

DENNY, J. His Honor, in ruling upon the motion for judgment as of nonsuit, said: "At the close of evidence for the plaintiff, on motion of the defendants for judgment as of nonsuit, the Court, in passing on the motion, and in the absence of an allegation in the complaint of insolvency of the partnership on complaint of the Receiver plaintiff; and in the absence of allegations relating to the issuable fact of fraud, and in the absence of any showing on the part of the plaintiff that the alleged purchaser at the mortgage sale was connected with the defendants to the extent that she represented the defendants by an act of agency or otherwise; and in view of the offering of the plaintiff of the contracts for the purchase and delivery of the property by Mr. Pegram, the Court is of the opinion and so holds that the plaintiff has failed to make out a case that entitles plaintiff to go to the jury, and thereupon grants the motion of the defendants for judgment as of nonsuit."

Is it necessary for the receiver in this action to allege insolvency of the Phillips-Bolling Lumber Company, in order to maintain the action? Under our statutes a receiver may be appointed for reasons other than insolvency. *Williams v. Gill, Receiver,* 122 N. C., 967, 29 S. E., 879.

In section 1208, C. S. of N. C., it is provided: "When a corporation becomes insolvent or suspends its ordinary business for want of funds, or is in imminent danger of insolvency, . . . a receiver may be appointed by the Court under the same regulations that are provided by law for the appointment of receivers in other cases."

Under section 1209, C. S. of N. C., a receiver has power and authority to—subsec. 3: "Institute suits for the recovery of any estate, property, damages, or demands existing in favor of the corporation."

Section 860, C. S. of N. C., authorizes the appointment of receivers and further provides that: "The article Receivers, in the chapter entitled Corporations, is applicable, as near as may be, to receivers appointed hereunder."

The receiver in the instant case was expressly authorized and directed by the court to bring this action.

"Since a receiver is not clothed with any right to maintain an action, which the parties or the estate represented could not maintain, he must show a cause of action existing in such parties, enforceable by him, in his capacity as receiver, in their behalf; and if the allegations by the receiver of a corporation show a suit which could not be maintained by the corporation, it is sufficiently shown that the receiver is seeking to enforce the rights of creditors.. Where the right to relief depends upon the existence of claims against the estate represented and the insolvency of such estate or the necessity of collecting the demand sued on in order to pay debts, those facts must be alleged, but where the right of action does not depend upon the existence of such facts they need not be alleged." 53 C. J., sec. 577, p. 356.

The partnership represented herein by the receiver, could have brought the action had a receiver not been appointed, and therefore, it is unnecessary, in view of the facts alleged, to further allege the insolvency of the partnership. The right to relief does not depend upon the insolvency of the partnership.

Must the receiver for the mortgagor, Phillips-Bolling Lumber Company, allege fraud in order to obtain relief against the mortgagees, who allegedly purchased the foreclosed property, through an agent, at their own sale? Our decisions do not so hold.

In an able opinion in the case of *Froneberger v. Lewis,* 79 N. C., 426, this subject is discussed and the earlier cases reviewed. The Court said: "Thus it will be seen that we have a train of decisions . . . all to the same effect, that a trustee cannot buy the trust property either directly or indirectly. And if he does so, he may be charged with the full value, or the sale may be declared void at the election of the *cestui que trust,* and this, without regard to the question of fraud, public policy forbidding it. . . . So that when a sale is made whether by himself or by an appointee of the Court or other person, it is his duty to see that the property is not sacrificed. . . . Not in one case in a thousand would a trustee who designs an advantage, take it straight by himself. He will contrive a confederate to sell, or a confederate to buy, and all the better if he can get the color of an order of Court."

According to our authorities, a mortgagee with power to sell, cannot directly or indirectly purchase at his own sale. This is not because there is, but because there may be, fraud. The act is one which is forbidden by public policy. In such case the mortgagor may elect to sue the mortgagee for the damages sustained by reason of said sale. *Brothers v. Brothers,* 42 N. C., 150; *Patton v. Thompson,* 55 N. C., 285; *Froneberger v. Lewis, supra; Bruner v. Threadgill,* 88 N. C., 361; *Gooch v. Vaughan,* 92 N. C., 610; *Gibson v. Barbour,* 100 N. C., 192, 6 S. E., 766; *Cole v. Stokes,* 113 N. C., 270, 18 S. E., 321; *Hayes v. Pace,* 162 N. C., 288, 78 S. E., 290; *Warren v. Susman,* 168 N. C., 457, 84 S. E., 760; *Burnett v. Supply Co.,* 180 N. C., 117, 104 S. E., 137; *Lockridge v. Smith,* 206 N. C., 174, 173 S. E., 36; *Davis v. Doggett,* 212 N. C., 589, 194 S. E., 288; *Smith v. Land Bank,* 213 N. C., 343, 196 S. E., 481; *Graham v. Floyd,* 214 N. C., 77, 197 S. E., 873; *Mills v. Building & Loan Assn.,* 216 N. C., 664, 6 S. E. (2d), 549.

In the fifth paragraph of the amended complaint, it is alleged: "The defendants through their attorney, L. P. Dixon, held a foreclosure sale and purchased the property covered by chattel mortgages aforesaid, at said sale, through their agent, Ruth S. Dixon, wife of L. P. Dixon aforesaid, and took title to said property in the name of said Ruth S. Dixon," and in the sixth paragraph of the amended complaint it is alleged: "That immediately after said foreclosure sale of the property covered by said chattel mortgages, the defendants took possession of said property and used the same in the prosecution of their business known as Dixie Lumber Company, and thereby converted said property to their own use; and said conversion was improper and unlawful." If these allegations can be sustained by competent evidence, they are sufficient to entitle the plaintiff to the relief sought.

We now come to the final questions: Were the facts disclosed by the evidence offered by the plaintiff sufficient to entitle the plaintiff to go to the jury on the question as to whether or not Ruth S. Dixon represented the defendants in the purchase and sale of the property foreclosed by the defendants? We think so. Was Ruth S. Dixon wife of L. P. Dixon, the attorney who conducted the foreclosure proceedings, and who was a member of the partnership known as Dixie Lumber Company, a *bona fide* purchaser for value? Did Ruth S. Dixon purchase the property as agent of the defendants, or did she merely permit the use of her name as purchaser for the convenience and benefit of the defendants? The plaintiff is entitled to have these questions considered and answered by a jury.

The judgment of the court below is

Reversed.