### GEORGE F. WILLETTS v. H. L. WILLETTS.

(Filed 1 March, 1961.)

**1. Cancellation and Rescission of Instruments § 7—**

The right of heirs to maintain an action to cancel a deed executed by their testator is derived from and limited by the right of action vested in the testator at the time of his death.

**2. Cancellation and Rescission of Instruments § 10—**

An action to rescind a deed for fradulent misrepresentations made by the grantee to the grantor at the time of the execution of the instrument is properly nonsuited when plaintiff fails to introduce any evidence of misrepresentations made at the time of the execution of the deed.

**3. Cancellation and Rescission of Instruments § 2: Fraud § 2—**

The mere relationship of parent and child is not such a confidential and fiduciary relationship as to invoke a presumption of fraud in the execution of a deed by the parent to the child.

**4. Same— Evidence held insufficient to show agency under circumstances rendering the agent a fiduciary in regard to matter in question.**

Evidence tending to show that a son, after his marriage, lived near the homeplace of his father, helped his father in farming and marketing operations, upon request gave his father advice in connection with the father's business affairs and problems, listed his father's land for taxes as agent of his father, together with evidence that the father was mentally competent to handle his affairs, and without any evidence that the son exercised or attempted to exercise a dominating influence on his father, *is held* insufficient to show that the son occupied such a position of trust or agency as to raise the presumption of fraud in the execution of a deed from the father to the son.

**5. Same—**

Evidence tending to show that upon the payment of a mortgage debt, presumably by the mortgagor, the mortgage was assigned to the mortgagor's son, without any evidence that the son at any time had or asserted any claim against the mortgagor, is insufficient to establish the relationship of mortgagor and mortgagee so as to raise the presumption of fraud in the later conveyance of the land by warranty deed to the son.

**6. Trusts § 5b—**

A grantor may not establish a parol trust upon his deed conveying the absolute title.

**7. Same—**

A parol trust may not be set up in favor of the grantor in a deed absolute in form upon allegations that at the time of the execution of the instrument the grantor was indebted to a third person and conveyed the land to the grantee under an agreement that the grantee would borrow money with which to discharge the debt and reconvey to the grantor subject to the mortgage after the prior debt had been satisfied.

**8. Limitation of Actions § 4—**

Ordinarily, the time at which the right to institute action arises determines when the applicable statute of limitations begins to run.

**9. Limitation of Actions § 17—**

Defendant's plea of the applicable statute of limitations puts upon plaintiff the burden of showing that the action was instituted within the prescribed period.

**10. Fraud § 5—**

A party who signs an instrument without reading it may not thereafter assert his ignorance of its contents as fraud on the part of the other contracting party unless he is prevented from reading the instrument by some trick, artifice or misrepresentation.

**11. Limitation of Actions § 7—**

An action for fraud in procuring the execution of a deed by misrepresentation that the grantee therein agreed to reconvey to grantor is barred as a matter of law by the three-year statute of limitations, G.S. 1-25(9), when plaintiff's own evidence discloses that the grantee claimed the absolute fee simple title to the knowledge of the grantor more than three years prior to the institution of the action.

APPEAL by plaintiffs from *Craven, Special Judge,* May-June Special Term, 1960, of BRUNSWICK, docketed and argued as No. 604 at Fall Term, 1960.

George F. Willetts instituted this action September 6, 1957. The complaint filed by George F. Willetts was answered by defendant.

Upon the death of George F. Willetts, *pendente lite,* Anna May Alburger, individually and as executrix of the estate of George F. Willetts, Roosevelt Willetts, Roger Willetts, Dorothy Willetts Cyph-

ers, Lillian Willetts Thomas, Wardie Willetts Potter and Thelma Willetts Varnum, seven of the children of George F. Willetts, were made parties plaintiff and adopted the original complaint. Defendant, a son of George F. Willetts, adopted his original answer.

The action is to set aside a deed dated February 26, 1936, executed and delivered by George F. Willetts and wife, Mary L. Willetts, to H. L. Willetts, which, according to its terms, conveys in fee simple, with full warranties, a tract of land in Brunswick County described (1) as "adjoining the lands of *G. F. Willetts,* Pink McDowell, Joseph McDowell, J. D. Greer land, G. K. Lewis, R. M. Robbins and others," and (2) by metes and bounds, and (3) as "being the same land inherited by G. F. Willetts from his father, Alfred Willetts and possessed for over fifty-six (56) years, . . ." (Our italics.) On March 9, 1936, the grantors acknowledged their execution of this deed before A. M. Beck, a Justice of the Peace, who certified, *inter alia,* that the private examination of Mary L. Willetts was duly taken. The deed was filed for registration on March 19, 1936, and recorded March 21, 1936, in Book 57, page 462, Brunswick County Registry. It is referred to hereafter as the "subject deed."

The complaint, in substance, alleges:

Prior to March 9, 1936, George F. Willetts was indebted to the Estate of J. W. Brooks in the amount of $800.00. His application for a loan to obtain money to pay the Brooks debt was declined on account of his age. Defendant had knowledge of these facts. The subject deed was executed and delivered under this agreement: Defendant was to obtain a loan from C. Ed. Taylor, Guardian, of sufficient amount to pay the Brooks debt and loan expenses. As security, defendant was to execute a first lien mortgage on the tract of land described in the subject deed. After doing so, defendant was to reconvey this land to George F. Willetts. Defendant obtained the loan from C. Ed. Taylor, Guardian, paid the Brooks debt and loan expenses, but did not reconvey the land to George F. Willetts.

George F. Willetts "requested" defendant to reconvey the land "on numerous occasions," and defendant, "up to within the last preceding year," agreed to do so "as soon as he could get some things straightened out, to wit, a $2500.00 encumbrance" defendant had placed on the land without the knowledge or approval of George F. Willetts.

On or about March 9, 1936, defendant, in the presence of A. M. Beck, presented the subject deed to George F. Willetts. Defendant then stated "it was a trust deed to the defendant conveying the lands agreed upon to get the loan through Mr. C. Ed. Taylor, Guardian, and falsely and fraudulently stated that the deed prepared provided that after the loan had been obtained, the J. W. Brooks Estate loan

paid, the said defendant, the vendee in said deed, should transfer said lands back to the plaintiff." These representations were false and fraudulent and were made with intent to deceive and did deceive George F. Willetts. Defendant paid no money or other consideration for the subject deed. George F. Willetts and wife, Mary L. Willetts, executed and delivered the subject deed in reliance upon said false and fraudulent representations of defendant. Provisions embodying the terms of the alleged agreement to reconvey were omitted from the deed by mistake of the draftsman.

George F. Willetts had implicit confidence in defendant. Defendant was his confidential agent and advisor. The land was worth not less than $4,000.00. The false and fraudulent representations of defendant were made in pursuance of "a scheme or procedure by which the defendant could become the owner of this tract of land and deprive his ten brothers and sisters of their inheritance." George F. Willetts is now in possession of the land and has been in possession thereof since 1936, "using it for the purpose for which it was capable of being used," and occupying and possessing it "adversely to all people." George F. Willetts listed and paid the taxes on the land through 1953. Defendant listed the land in his own name for 1954, 1955 and 1956 but had not paid the taxes for these years.

Defendant sold timber of the value of $3,250.00 but failed and refused to comply with George F. Willetts' repeated demands that defendant account to him for the proceeds.

The prayer of the complaint is that George F. Willetts be adjudged the owner of the land; that defendant be directed to reconvey the land to George F. Willetts or that the subject deed be adjudged void; that defendant be directed to account to George F. Willetts for all money, plus interest, received by him from the sale of timber; that defendant pay the costs; that George F. Willetts be awarded such other and further relief to which he may be entitled.

Answering, defendant admitted that George F. Willetts owned the land on and prior to March 9, 1936, and that he had knowledge of the Brooks debt which, defendant alleged, was in an amount in excess of $800.00. Defendant alleged that "after your defendant purchased the lands described in the complaint he gave a mortgage on said lands to C. Ed. Taylor and thereafter paid off the lien that was against said lands to the J. W. Brooks Estate and also paid several other debts that were owed to various creditors by the plaintiff." Defendant admitted that he had sold timber from the land on various occasions but denied that George F. Willetts had ever requested or demanded any of the proceeds therefrom until he "instituted *an action* demanding that your defendant reconvey the lands in the complaint

to the plaintiff." (Our italics.) Except as stated, defendant denied the allegations of the complaint.

For further defenses, defendant pleaded (1) the Statute of Frauds in bar of George F. Willetts' right to recover on the alleged oral agreement to reconvey, and (2) the three-year Statute of Limitations in bar of George F. Willetts' right to recover for the alleged fraud.

It was stipulated "that an action involving the same subject matter was instituted by *George F. Willetts v. H. L. Willetts, et al.,* on the 7th day of February, 1957, in which a voluntary nonsuit was taken by the plaintiff on the 2nd day of May, 1957; costs of Court therein having been paid before the institution of the present action."

Plaintiffs having introduced their evidence and rested their case, the court, allowing defendant's motion therefor, entered judgment of involuntary nonsuit. Plaintiffs excepted and appealed.

*Kellum & Humphrey and Kirby Sullivan for plaintiffs, appellants.
Herring, Walton & Parker for defendant, appellee.*

BOBBITT, J. The question is whether the evidence, considered in the light most favorable to plaintiffs, is sufficient to support the cause of action alleged by George F. Willetts. Plaintiffs have no legal rights except those derived from George F. Willetts, their father. *Holt v. Holt,* 232 N.C. 497, 61 S.E. 2d 448, and cases cited.

There is testimony that the words "G. F. Willetts, Pink McDowell, Joseph McDowell, J. D. Greer land, G. K. Lewis, R. M. Robins," preceding the particular description in the subject deed, are in the handwriting of C. Ed. Taylor, an attorney who died October 16, 1943. Apart from this, no evidence was offered as to the identity of the draftsman or as to the circumstances attending the drafting of the subject deed.

No evidence was offered as to what occurred on March 9, 1936, when George F. Willetts and wife, Mary L. Willetts, executed and acknowledged the subject deed before A. M. Beck, Justice of the Peace. In this connection, it is noted: Mary L. Willetts died June 15, 1951. George F. Willetts died February 20, 1958. No evidence was offered as to whether A. M. Beck was living at the time of the trial. In any event, A. M. Beck did not testify.

Plaintiffs' evidence was insufficient to support the allegations that defendant made false and fraudulent representations to George F. Willetts to the effect the subject deed contained provisions embodying the alleged oral agreement to reconvey or to support the allegations that such provisions were omitted from the subject deed by mistake of the draftsman.

Plaintiffs assert defendant had the means and power to take advantage of his father by reason of the alleged confidential and fiduciary relationship.

"The law is well settled that in certain known and definite 'fiduciary relations, if there be dealing between the parties, on the complaint of the party in the power of the other, the relation of itself and without other evidence, raises a presumption of fraud, as a matter of law, which annuls the act unless such presumption be rebutted by proof that no fraud was committed, and no undue influence or moral duress exerted.' *Lee v. Pearce,* 68 N.C. 76. Among these, are, (1) trustee and *cestui que trust* dealing in reference to the trust fund, (2) attorney and client, in respect of the matter wherein the relationship exists, (3) mortgagor and mortgagee in transactions affecting the mortgaged property, (4) guardian and ward, just after the ward arrives of age, and (5) principal and agent, where the agent has entire management so as to be, in effect, as much the guardian of his principal as the regularly appointed guardian of an infant." *McNeill v. McNeill,* 223 N.C. 178, 181, 25 S.E. 2d 615, and cases cited.

It is well settled that the mere relation of parent and child does not raise the presumption of fraud. *Walters v. Bridgers,* 251 N.C. 289, 111 S.E. 2d 176, and cases cited.

As to the actual relationship between defendant and his father prior to the execution of the subject deed, the evidence tends to show these facts:

The home in which plaintiffs and defendant were reared was on the land described in the subject deed. Apparently, defendant was the oldest child. He went to grade school in Brunswick County but did not attend high school or college. After 1921 or 1922, defendant, then married, did not live with his parents or on the tract of land described in the subject deed. Until 1931, he lived approximately one-half mile from his parents' home. After 1931, he lived approximately a mile and a half from his parents' home.

Two of the plaintiffs (Mrs. Alburger and Mrs. Thomas) had left their parents' home to pursue occupations elsewhere. One (Roger W. Willetts) was in college. (Note: Mrs. Cyphers left in July, 1936. Mrs. Potter left when "23 years old," but the record does not disclose her age.) The record leaves the impression that, subsequent to March, 1936, such time as these plaintiffs spent in their parents' home was principally while on visits until Mrs. Cyphers and Mrs. Thomas returned in 1953 or thereafter.

There is evidence that defendant assisted his father in farming and in marketing his crops and livestock, and that his father often requested defendant's advice in connection with his business affairs and

problems. Too, there is evidence that the property of George F. Willetts was listed for taxes for 1933, 1934, 1935 and 1936 in the name of George F. Willetts by H. L. Willetts. In the listing for 1933, the return was signed by H. L. Willetts "as agent."

In March, 1936, George F. Willetts was 61 years of age. Defendant was 36. There is neither allegation nor evidence that George F. Willetts was mentally or physically incapable of transacting business in March, 1936. Mrs. Thomas, one of the plaintiffs, testified: "My father was not a little bit weak-minded. I said that my father was perfectly capable of taking care of his own business up until the day he died. . . . in 1936 he was perfectly capable of taking care of his own business and I know that during his life and during those years in the 1930's there was not any time when he was sick or unable or when his mind was gone. His mind was all right."

In our opinion, the evidence is insufficient to establish that defendant's relationship to his father in March, 1936, was that of a fiduciary within the meaning of the fifth category of fiduciary relations set forth in *McNeill v. McNeill, supra.* The evidence leaves the impression that all defendant did was to assist his father when called upon to do so. Indeed, Roger W. Willetts, one of the plaintiffs, testified: "I would think that if my father asked Sinker (defendant) for any advice it would be his duty to give it to him. There is nothing wrong with that so far as I know." This witness, a college graduate and Education Officer for the U. S. Army Transportation Corps, stationed at Williamsburg, Virginia, testified as to his own relationship with his father: "My father and I were real close. If my father asked any advice about what to do on any matter, of course, I would give it to him to the best of my ability. I would think that was my duty as a son."

There is no evidence tending to show any incident or transaction either before or after the execution and delivery of the subject deed in which defendant exercised or attempted to exercise a dominating influence over his father. Moreover, the allegations as to fraud relate solely to alleged misrepresentations as to the contents of the subject deed.

The foregoing impels the conclusion that the evidence is insufficient to establish that, at the time of the execution and delivery of the subject deed, defendant's relationship to his father was such a confidential and fiduciary relationship as to give rise to the presumption of fraud.

We have not overlooked plaintiffs' contention that, at and prior to the execution and delivery of the subject deed, defendant occupied the status of mortgagee and his father the status of mortgagor in

respect of the land described therein. As to this, the complaint contains no allegations as to such mortgagor-mortgagee relationship. The evidence relevant to this contention is as follows: In 1917, prior to his execution of the mortgage securing the Brooks debt, George F. Willetts had executed a mortgage to J. C. Potter. The Potter mortgage covered a tract of 150 acres which included the land conveyed by the subject deed. Upon payment of the Potter debt (presumably by George F. Willetts) in 1930, the Potter mortgage was assigned to H. L. Willetts. It was not cancelled of record until March, 1936, when the new loan obtained by defendant from C. Ed. Taylor, Guardian, was closed. The cancellation in March, 1936, was authorized by "H. L. Willetts, assignee." Mrs. Alburger, one of the plaintiffs, testified that defendant told her the Potter paper was assigned to him "so that he could use that as collateral at any time that he might need it for business reasons." There is no evidence that defendant at any time had or asserted a claim against his father on account of the Potter mortgage or that defendant ever used the Potter mortgage as collateral to borrow money either for himself or for his father. (Note: The Brooks mortgage, which was executed in 1919, contained a provision to the effect that it was made subject to the said Potter mortgage.) Apart from the absence of allegation, the evidence is insufficient, in our opinion, to establish that George F. Willetts was obligated to defendant in March, 1936, in the relationship of mortgagor to mortgagee.

Absent sufficient evidence to establish that defendant procured the subject deed by fraud or mistake of the draftsman, plaintiffs' case rests upon the breach by defendant of the alleged oral agreement to reconvey.

A well established rule is stated by *Hoke, J.* (later *C.J.*), in this oft-quoted excerpt from his opinion in the case of *Gaylord v. Gaylord,* 150 N.C. 222, 227, 63 S.E. 1028: "Upon the creation of these estates (parol trusts), however, our authorities seem to have declared or established the limitation that except in cases of fraud, mistake or undue influence, a parol trust, *to arise by reason of the contract or agreement of the parties thereto,* will not be set up or engrafted *in favor of the grantor* upon a written deed conveying to the grantee the absolute title, and giving clear indication on the face of the instrument that such a title was intended to pass." (Our italics.)

In *Loftin v. Kornegay,* 225 N.C. 490, 35 S.E. 2d 607, *Denny, J.,* says: "A parol agreement in favor of a grantor, entered into at the time of or prior to the execution of a deed, and at variance with the written conveyance, is unenforceable in the absence of fraud, mistake or undue influence. (Citations.) To permit the enforcement of such

an agreement would be tantamount to engrafting a parol trust in favor of a grantor upon his deed, which purports to convey the absolute fee simple title to the grantee. A parol trust in favor of a grantor cannot be engrafted upon such a deed. (Citations.)" Later cases in accord: *Conner v. Ridley,* 248 N.C. 714, 104 S.E. 2d 845; *Vincent v. Corbett,* 244 N.C. 469, 94 S.E. 2d 329; *Lamm v. Crumpler,* 240 N.C. 35, 81 S.E. 2d 138; *Jones v. Brinson,* 231 N.C. 63, 55 S.E. 2d 808; *Bass v. Bass,* 229 N.C. 171, 48 S.E. 2d 48; *Poston v. Bowen,* 228 N.C. 202, 44 S.E. 2d 881.

In *Gaylord,* the evidence tended to show that Ebenezer Gaylord in 1884 executed the deed to Sam Gaylord, his brother; that he did so because, then having some trouble with his first wife and his father-in-law, he wanted to place his property so his wife could establish no claim upon it in case of litigation; that the deed was made with the understanding that Sam was to reconvey the land to Ebenezer whenever he called for a deed; that no consideration was paid by Sam for the deed; and that Ebenezer continued in possession and control of the property until his death in 1898. The plaintiffs were the children of Ebenezer by his second wife. It is noted that the judgment of involuntary nonsuit was reversed. The cause was remanded for trial to determine whether the deed, which was not recorded during Ebenezer's lifetime, was in fact delivered to Sam or merely deposited with him in escrow.

Decisions cited by plaintiffs, *e.g., Bowen v. Darden,* 241 N.C. 11, 84 S.E. 2d 289, relating to the establishment of resulting trusts, do not apply. They rest upon "the general rule that in the absence of circumstances indicating a contrary intent, where the purchase price of property is paid with the money of one person and the title is taken in the name of another, for whom he is under no duty to provide, a trust in favor of the payor arises by operation of law and attaches to the subject of the purchase." *Creech v. Creech,* 222 N.C. 656, 661, 24 S.E. 2d 642. Here, as in *Gaylord* and similar cases, plaintiffs seek to engraft a parol trust in favor of George F. Willetts *upon his own deed* which, by its terms, conveyed the absolute fee simple title to defendant.

Subsequent to March 19, 1936, George F. Willetts and wife, Mary L. Willetts, continued to live on the land described in the subject deed. Each lived there until death. Their children who lived away from home visited them as theretofore. During certain years the land was farmed by defendant. In other years it "lay out." In other years it was leased under arrangements made by George F. Willetts and by defendant. Subsequent to March, 1936, the land was listed

for taxes in certain years in the name of George F. Willetts by H. L. Willetts and in certain years in the name of H. L. Willetts.

In 1953, Dorothy Willetts Cyphers, one of the plaintiffs, was separated from her husband. Defendant went to Newport News, Virginia, and brought her and her children back to her father's home in Brunswick County. She and her two children continue to reside there. Mrs. Lillian Willetts Thomas, one of the plaintiffs, also resides there.

Testimony as to statements made by defendant in 1954 and 1955, if competent for such purpose, was sufficient to support a finding that defendant had promised to reconvey the land to George F. Willetts after he had made arrangements to pay off the Brooks debt. Mrs. Cyphers testified to statements made by defendant in 1954. Roger W. Willetts, Mrs. Alburger, Mrs. Thomas and Mrs. Potter testified to statements made by defendant in 1955. There was testimony that in October, 1955, defendant agreed to go to a lawyer and have the names of all the children put on the deed but later refused to do so. There was evidence to the effect that, prior to 1954, none of the plaintiffs knew defendant had a deed for the land.

The mortgage securing the payment of $925.00 to C. Ed. Taylor, Guardian of James Stanley, was executed by H. L. Willetts and wife, Beulah Willetts. It is dated March 9, 1936, and recorded in Book 52, page 539, Brunswick County Registry. It was filed for registration on March 19, 1936, at 2:00 p.m. simultaneously with the subject deed.

"In general a cause or right of action accrues, so as to start the running of the statute of limitations, as soon as the right to institute and maintain a suit arises, . . ." 54 C.J.S., Limitation of Actions § 109; 34 Am. Jur., Limitation of Actions § 113; *Shearin v. Lloyd*, 246 N.C. 363, 367, 98 S.E. 2d 508, and cases cited.

Obviously, George F. Willetts' alleged cause of action, if considered solely as an action to enforce the alleged oral contract, is barred by the three year statute of limitations. G.S. 1-52(1). The view most favorable to plaintiffs is that G.S. 1-52(9) applies, under which an action "(f)or relief on the ground of fraud or mistake" must be instituted within three years from the date the cause of action accrues, but in such case "the cause of action shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake."

Assuming, but not deciding, that the evidence was sufficient to support a finding that defendant procured the subject deed by fraud, defendant's plea of the three-year statute of limitations put upon plaintiffs the burden to show that this action was instituted within the prescribed period.

Whether this action is barred by G.S. 1-52(9) does not depend upon

when plaintiffs first learned the subject deed had been made to defendant. Nor does it depend upon whether defendant misled plaintiffs or any of them or failed to comply with an oral agreement in October, 1955, to have their names put on the deed. To repel the bar of the statute of limitations, the burden was on plaintiffs to show that George F. Willetts did not acquire knowledge of the alleged fraud and was not put on notice thereof until a time within the period of three years next preceding the institution of this action or the prior action instituted by him on February 7, 1957, and referred to in the stipulation quoted in the statement of facts. *Swartzberg v. Insurance Co.*, 252 N.C. 150, 157, 113 S.E. 2d 270, and cases cited.

"The duty to read an instrument or to have it read before signing it, is a positive one, and the failure to do so, in the absence of any mistake, fraud or oppression, is a circumstance against which no relief may be had, either at law or in equity." *Harrison v. R.R.*, 229 N.C. 92, 95, 47 S.E. 2d 698; *Harris v. Bingham*, 246 N.C. 77, 97 S.E. 2d 453; *Isley v. Brown*, 253 N.C. 791, 117 S.E. 2d 821, and cases therein cited.

Evidence, uncontradicted and unequivocal, is to the effect that George F. Willetts could read and write and in 1936 and thereafter until his death (at the age of 83) was capable of transacting his own business. There was evidence that he had served as a constable and also as a justice of the peace.

In 1943 a timber deed was executed and delivered by George F. Willetts and wife, Mary L. Willetts, and by H. L. Willetts and wife, Beulah Willetts. The only land covered thereby owned by H. L. Willetts was that conveyed by the subject deed; but the timber deed also covered land owned by George F. Willetts and not conveyed by the subject deed.

In 1946, another timber deed was executed and delivered by George F. Willetts and wife, Mary L. Willetts, and by H. L. Willetts and wife, Beulah Willetts. It appears that this timber deed covers only the land conveyed by the subject deed. After the particular description, these words appear: "And being the same land conveyed to H. L. Willetts by George F. Willetts and wife by deed dated February 26, 1936."

In his answer, defendant admitted that he had sold timber from the land conveyed by the subject deed and asserted he received and was entitled to receive the proceeds from such sales. He denied that his father had ever requested or demanded any portion of the proceeds. The complaint alleges that George F. Willetts "repeatedly" made demands therefor and defendant refused to comply with such demands. Obviously, the proceeds from such sales of timber were received by

defendant in 1943 and 1946. If such demands were made by George F. Willetts and refused by defendant, this tends to show that George F. Willetts was fully aware of the fact that defendant had or claimed ownership in fee under the subject deed.

The complaint alleges that George F. Willetts "requested" defendant, "on numerous occasions," to reconvey the land to him. While such requests, if made, imply that George F. Willetts contended defendant was obligated under the alleged oral agreement to reconvey the land to George F. Willetts, they tend to show that George F. Willetts was fully aware of the fact that defendant had or claimed ownership in fee under the subject deed.

The conclusion reached is that the evidence offered by plaintiffs is insufficient to show that this action was brought within the prescribed time; but, on the contrary, plaintiffs' evidence tends to show that George F. Willetts' cause of action for alleged fraud, if any he had, was barred by G.S. 1-52(9) many years prior to the institution of this or any action to set aside the subject deed.

For the reasons stated, the judgment of involuntary nonsuit was properly entered and is affirmed.

It is noted: We have elected to consider this appeal upon the assumption that plaintiffs are entitled to prosecute this action as heirs of George F. Willetts. It was so considered in the briefs. However, the only information disclosed by the record as to the substitution of the present plaintiffs for George F. Willetts is a stipulation setting forth, *inter alia,* that Anna May Alburger, individually and *as executrix,* was made a party plaintiff. Mrs. Alburger's testimony includes the following: "The paper writing you are showing me is my father's will. It was dated September 1, 1957. I know who wrote that will; it was my husband." The record does not contain any will of George F. Willetts. While these facts are noted, no opinion is expressed herein as to what bearing, if any, the judgment of involuntary nonsuit herein may have upon the rights, if any, of the devisees under a will, if any, of the late George F. Willetts.

Affirmed.