CLEO N. BLACKBURN, MYRTLE N. SOLES, RUTH N. BRICE, CLOTEAL N. GORE, BLANCHE BERNICE N. DAVENPORT, MARJORIE N. EYRE, AND HARVEY FLOYD NORRIS v. EARL DUNCAN, ADMINISTRATOR OF THE ESTATE OF RAY TATE NORRIS, ILA PEARL NORRIS, JENNIFER NORRIS, A MINOR, BURDON NORRIS AND WIFE, ANNIE PEARL NORRIS

No. 7413SC22

(Filed 6 March 1974)

**Fiduciaries; Fraud §§ 10, 12— conveyance of property to fiduciary — presumption of fraud**

In an action to set aside a deed on ground of fraud, impose a constructive trust on certain lands, and recover rents, profits and other sums, the trial court erred in directing a verdict for defendants since the evidence tended to show that grantees of the deed looked after the grantor's affairs, including the operation of her farm which was the subject of the deed in question, for some four or five years prior to her death, and such evidence was sufficient to show a fiduciary relationship between grantor and the defendants.

APPEAL by plaintiffs from *Clark, Judge,* March 1973 Civil Session of Superior Court held in COLUMBUS County.

This is an action to set aside a deed on ground of fraud, impose a constructive trust on certain lands, and recover rents, profits and other sums.

Plaintiffs are six of the daughters and one of the sons of Mary F. Norris, deceased (Mrs. Norris). Defendant Burdon Norris (Burdon) is a son of said decedent. Defendant Duncan is the administrator of the estate of Ray Tate Norris (Tate), a deceased son of Mrs. Norris. Defendant Ila Pearl Norris is the widow, and defendant Jennifer Norris is the only surviving child of Tate. Two other daughters of Mrs. Norris are not parties to the action.

In their complaint, filed 26 October 1971, plaintiffs allege: At the time of her death on 23 May 1969, Mrs. Norris was seized and possessed of a valuable farm in Columbus County containing approximately 110 acres. In the spring and summer of 1966, Burdon and Tate assisted Mrs. Norris, their mother, in the management of her affairs and enjoyed a close association with her. In May of 1966, Burdon and Tate, through fraud and deceit, procured the signature of their mother to a paperwriting purporting to be a deed conveying said lands to them. Plaintiffs pray for the relief indicated above.

At the conclusion of plaintiffs' evidence, defendants' motion for directed verdict was allowed and from judgment entered thereon, plaintiffs appeal.

*Williamson & Walton, by Edward Williamson, for plaintiff appellants.*

*McGougan and Wright, by D. F. McGougan, Jr., for defendant appellees.*

BRITT, Judge.

We hold that the court erred in allowing defendants' motion for directed verdict.

Admissions and evidence presented at trial, viewed in the light most favorable to plaintiffs, tended to show:

In May of 1966, Mrs. Norris was living on her 110 acre farm near Tabor City in Columbus County. The farm was worth $60,000. At that time, she was approximately 78 years of age and was confined to a wheel chair due to a previously broken hip; a lady "caretaker" lived with and helped look after her. Mrs. Norris had three sons and eight daughters, most of whom lived in the Tabor City area. At that time, Burdon was 37 and resided in a house just across the road from his mother and saw her at least weekly. Tate also lived close by.

Beginning in 1965, Burdon and Tate took over the operation of Mrs. Norris' farm which had a tobacco allotment of approximately 3½ acres. Burdon consolidated her tobacco allotment with his and tended the tobacco while Tate tended the other crops. They continued this arrangement until her death. In 1965, Burdon paid Mrs. Norris either $1,600 or $1,800 cash rent and paid the annual installment due on a Federal Land

Bank debt, the installment being approximately $500. After 1965, Burdon did not pay any rent but paid the Land Bank installments and gave Mrs. Norris cash "whenever she asked for it." He paid some bills for her and went to the grocery and drug stores for her. Although Mrs. Norris was receiving Social Security benefits and her other children contributed to her upkeep, Burdon was "sort of looking after it" and if there was any "shortage" he would make it up. Certain members of the family testified that Burdon and Tate looked after Mrs. Norris' farming operations and business affairs for four or five years prior to her death. Called as an adverse witness, Burdon testified, among other things, "Whenever my mother needed anything or whenever she needed advice on any matters, I would say the majority of the time she called on me."

In May of 1966, Burdon and Tate went to Conway, South Carolina, where they conferred with a lawyer about preparing a deed from Mrs. Norris to them. The Conway attorney recommended that they employ a North Carolina attorney and they went to Southport, in Brunswick County, where they conferred with Attorney E. J. Prevatte. At their request, Attorney Prevatte prepared a deed from Mrs. Norris which would convey title to the 110 acre farm to Burdon and Tate, subject to Mrs. Norris' life estate. Attorney Prevatte also prepared a note from Burdon and Tate and their wives payable to the other nine children of Mrs. Norris for $5,000, payable within two years after Mrs. Norris' death; he also prepared a deed of trust to D. F. McGougan, Trustee, embracing said lands and securing said note. The prepared deed, note and deed of trust were mailed to Burdon and he and Tate took the deed to their mother for her to sign. They were accompanied by Tate's brother-in-law, Earl Duncan, and Shirley Hardin, a notary public who worked for Duncan. After the deed was signed, Burdon took possession of it. Burdon, Tate, their wives, Duncan and Shirley Hardin were the only ones that knew about Mrs. Norris signing the deed until after Mrs. Norris' death.

In June of 1967, by telephone, Mrs. Norris contacted Attorney R. C. Soles, Jr., her grandson, and advised him that she wanted some legal work done. Soles went to see her and she informed him that she wanted to make a deed for her farm to her eleven children. Soles explained to her the difference between a deed and a will and, at her request, prepared both, which were executed. Soles did not record the deed but placed

it and the will in his safe where the documents remained until after Mrs. Norris' death.

Burdon and Tate learned that Mrs. Norris had signed some papers that Soles had prepared. Thereupon, on 19 June 1967, they went to the Register of Deeds Office in Whiteville, told the register of deeds that they had some papers they wanted recorded but they wanted "it kept out of the newspapers." The register of deeds agreed to keep the information from the newspapers, whereupon the deed that Mrs. Norris had signed for Burdon and Tate in May of 1966, together with the deed of trust mentioned above, were filed for registration. Following registration, the deed and deed of trust were returned to Burdon who kept them until after his mother's death.

Mrs. Norris died on 23 May 1969. Following her funeral, Burdon informed other members of the family about the deed which he held. Tate died on 23 June 1969 and his administrator, his wife and daughter, were made parties to the action.

We think this case is quite similar to *McNeill v. McNeill*, 223 N.C. 178, 25 S.E. 2d 615 (1943). The evidence in that case tended to show: In December 1938, the decedent, Mrs. Hall, was a widow and the owner of a 200 acre farm. She made her cousin, Johnnie L. McNeill, her "supervisor" or agent and invested him with authority to look after the renting and management of her farm. In January 1939, Mrs. Hall executed a paperwriting in the form of a deed purporting to convey to McNeill 75 acres of her land, subject to her life estate. In April 1939, she executed another writing in the form of a deed purporting to convey to McNeill and his wife 105 acres of her land, subject to her life estate and a specified lease. Also in April 1939, Mrs. Hall executed a purported will naming McNeill her executor and principal beneficiary. Mrs. Hall died in April 1942 at age 80. The Supreme Court held that the trial court erred in not instructing the jury with respect to the fiduciary relation existing between Mrs. Hall and McNeill and the presumption arising from that relationship. We quote from the opinion (p. 181):

> "The law is well settled that in certain known and definite 'fiduciary relations, if there be dealing between the parties, on the complaint of the party in the power of the other, the relation of itself and without other evidence, raises a presumption of fraud, as a matter of law, which

annuls the act unless such presumption be rebutted by proof that no fraud was committed, and no undue influence or moral duress exerted.' *Lee v. Pearce,* 68 N.C., 76. Among these, are, . . . (5) principal and agent, where the agent has entire management so as to be, in effect, as much the guardian of his principal as the regularly appointed guardian of an infant. (Citations omitted.)

" 'When one is the general agent of another, who relies upon him as a friend and adviser, and has entire management of his affairs, a presumption of fraud, as a matter of law, arises from a transaction between them where in the agent is benefited, and the burden of proof is upon the agent to show by the greater weight of the evidence, when the transaction is disputed, that it was open, fair and honest.' *Smith v. Moore* (7th syllabus), 149 N.C., 185, 62 S.E., 892.

\*          \*          \*

"Wigmore puts it this way: 'Where the grantee or other beneficiary of a deed or will is a person who has maintained intimate relations with the grantor or testator, or has drafted, or advised the terms of the instruments, a presumption of undue influence or of fraud on the part of the beneficiary has often been applied.' Evidence (3rd Ed.), sec. 2503, and cases cited in note.

"The doctrine rests on the idea, not that there *is* fraud, but that there *may be* fraud, and gives an artificial effect to the relation beyond its natural tendency to produce belief. *Peedin v. Oliver,* 222 N.C., 665; *Harris v. Hilliard,* 221 N.C., 329, 20 S.E. (2d), 278."

It is true that in *McNeill* there was a power of attorney from Mrs. Hall to McNeill, but it was executed in November 1941 whereas the purported deeds and will were executed in January and April of 1939. We think the evidence in the case at bar was sufficient to show a fiduciary relationship, that of principal and agent, between Mrs. Norris and Burdon and Tate. One of the definitions for agent is found in Black's Law Dictionary, Deluxe Fourth Edition, page 85, as follows: "A person authorized by another to act for him, one intrusted with another's business. *Downs v. Delco-Light Co.,* 175 La. 242, 143 So. 227." There was evidence tending to show that Burdon and Tate,

---

Goff v. Realty and Insurance Co.

---

for some four or five years prior to her death, were looking after Mrs. Norris' affairs, including the operation of her farm.

Defendants argue that this case is controlled by *Willetts v. Willetts,* 254 N.C. 136, 118 S.E. 2d 548 (1961). We think the cases are clearly distinguishable. Among other things in *Willetts* there was no contention that the execution of the deed was *obtained* by fraud or deceit; the gist of the action was that defendant son refused to reconvey the land to his father after the reason for the transfer of title had been removed. Furthermore, there was considerably less evidence of agency and a fiduciary relationship in *Willetts* than was presented in the instant case.

For the reasons stated, the judgment appealed from is

Reversed.

Judges PARKER and VAUGHN concur.