## WILLIAM F. CARROLL v. H. HORTON ROUNTREE

No. 763SC989

(Filed 2 May 1978)

**Attorneys at Law § 5.1; Fraud § 12— attorney's misrepresentation to client—rebuttal of fraud**

   In an action to recover punitive damages on the ground that defendant attorney breached his fiduciary obligation to plaintiff by failing to withhold delivery of a check to plaintiff's estranged wife until she had signed a separation agreement and a stipulation of dismissal of an alimony action and subsequently misrepresenting to plaintiff that his wife had signed the documents, any presumption of fraud arising from the attorney-client relationship was rebutted at the hearing on motion for summary judgment, and summary judgment was properly entered for defendant on the issue of fraud where it appears that defendant performed the services for which he was paid a reasonable fee; defendant's affidavit stated that he followed the customary practice of attorneys in his area by forwarding the check to the wife's attorney, who was responsible for obtaining the wife's signature on the documents before disbursing funds to her, and that he advised plaintiff that his wife had signed the documents because he thought everything had been accomplished; it was undisputed that as soon as defendant. learned that plaintiff's wife had failed to sign the documents, he initiated successful procedures to have the wife's alimony action dismissed; it was also undisputed that plaintiff obtained a divorce without intervention by his wife; and plaintiff presented no affidavits or other materials to contradict defendant's evidence.

PLAINTIFF appealed from judgment entered by *Judge Webb* 11 October 1976 in Superior Court, PITT County. The appeal was heard in this Court on 24 August 1977, and opinion therein was filed 5 October 1977. 34 N.C. App. 167, 237 S.E. 2d 566 (1977). Plaintiff filed petition to rehear. The petition was granted, and the matter was heard on the petition to rehear on 3 February 1978.

   The facts necessary for determination of this matter are set out in the previous opinion. We will not restate them here. By his petition to rehear, plaintiff contends that the Court "misapprehended points of fact and law in affirming the trial court's entry of summary judgment against the plaintiff as to Count III of plaintiff's cause of action against the defendant for punitive damages." The same contention is made with respect to Count II of plaintiff's cause of action against defendant for mental and emotional distress.

*Nye, Mitchell & Bugg, by John E. Bugg, for plaintiff appellant.*

*Teague, Johnson, Patterson, Dilthey and Clay, by Ronald C. Dilthey, for defendant appellee.*

MORRIS, Judge.

Plaintiff, in his brief, discusses Count III first. We shall follow his order.

By Count III of his complaint after adopting the allegations of Counts I and II, plaintiff alleges that "the reckless, careless, intentional, malicious and gross actions of the defendant in violation of his fiduciary duties owed unto the plaintiff entitles the plaintiff to punitive damages in a sum of not less than $200,000.00." In his brief plaintiff argues that this Court failed to understand the allegations and erroneously applied the law. He urges that "what is material is that the plaintiff alleged that the defendant knowingly misrepresented to him on October 23, 1972, that the subject instruments had been signed when they had not been signed." We note in passing that this misrepresentation occurred several months after the alleged breach.

We think plaintiff's position was clearly encompassed in the discussion of the question of punitive damages in our original opinion when we said:

> "Here plaintiff alleges that defendant failed to hold the funds until plaintiff's wife had signed all the documents she was supposed to sign. He further alleges that subsequently defendant misrepresented the facts by advising plaintiff that everything had been done in accordance with the agreement, and that the breach of contract was in violation of defendant's fiduciary obligations which he attempted to cover up 'by misrepresentation and gross lies'. . . ." 34 N.C. App. at 176, 237 S.E. 2d at 573.

Plaintiff further contends that, because of the fiduciary relationship, a presumption of fraud exists and that this position was not discussed in the original opinion. For purposes of specificity and possible clarification, we will discuss this contention more fully.

"The law is well settled that in certain known and definite 'fiduciary relations, if there be dealing between the parties, on the complaint of the party in the power of the other, the relation of itself and without other evidence, raises a presumption of fraud, as a matter of law, which annuls the act unless such presumption be rebutted by proof that no fraud was committed, and no undue influence or moral duress exerted.' *Lee v. Pearce*, 68 N.C., 76. Among these, are, (1) trustee and *cestui que trust* dealing in reference to the trust fund, (2) attorney and client, in respect of the matter wherein the relationship exists, (3) mortgagor and mortgagee in transactions affecting the mortgaged property, (4) guardian and ward, just after the ward arrives of age, and (5) principal and agent, where the agent has entire management so as to be, in effect, as much the guardian of his principal as the regularly appointed guardian of an infant. *Abbitt v. Gregory*, 201 N.C., 577 (at p. 598); *Harrelson v. Cox*, 207 N.C., 651, 178 S.E., 361; *Hinton v. West*, 207 N.C., 708, 178 S.E., 356; *McLeod v. Bullard*, 84 N.C., 515, approved on rehearing, 86 N.C., 210; *Harris v. Carstarphen*, 69 N.C., 416; *Williams v. Powell*, 36 N.C., 460.

. . .

The doctrine rests on the idea, not that there *is* fraud, but that there *may be* fraud, and gives an artificial effect to the relation beyond its natural tendency to produce belief. *Peedin v. Oliver*, 222 N.C., 665; *Harris v. Hilliard*, 221 N.C., 329, 20 S.E. (2d), 278." *McNeill v. McNeill*, 223 N.C. 178, 181, 25 S.E. 2d 615, 616 and 617 (1943). *See also Tatom v. White*, 95 N.C. 453 (1886); 2 Stansbury, N.C. Evidence, Brandis Revision, § 225.

This presumption of fraud is a *presumption of law*, not a presumption of fact. Furthermore, it is a *rebuttable* presumption. *Lee v. Pearce*, 68 N.C. 76, 87 (1873). Thus, assuming that the presumption of fraud arises in this case, the question before this Court is whether that presumption has been rebutted. To determine whether it has been rebutted we must examine the interrogatories and affidavits presented.

Plaintiff employed defendant prior to 8 May 1972 "in order to resolve the marital problems existing between the plaintiff and

his wife". On 17 July 1972, defendant wrote to plaintiff enclosing a check for $10,469.01 and an accounting of the proceeds of the sale of the family farm. From plaintiff's share of $21,938.02, defendant showed that he had paid plaintiff's wife, in accordance with their agreement, $10,969.01 and had deducted $500 as his fee, leaving a balance of $10,469.01 to be remitted to plaintiff. He also advised plaintiff that "we have completely disposed of this case (wife's suit against plaintiff) by dismissal plus a separation agreement plus a deed to the 1/10th acre." On 23 October 1973, defendant wrote to plaintiff as follows:

> "With reference to your letter of October 14, 1972, your wife, Elizabeth *did* sign the Deed of Separation and also a Judgment dismissing the non-support action against you. I assume that it would be in order for you to go ahead and get your divorce at this time, as the year is now up. I would suggest that you get the divorce, if you possibly can, up there. I assume that Elizabeth will *not* contest it, since she *has been* paid completely."

No question is raised with respect to the last statement since the wife had been fully paid. However, the statements that "Elizabeth did sign the deed of separation and also a judgment dismissing the nonsupport action against you" were false.

Pertinent interrogatories propounded to defendant by plaintiff and the answers of defendant are here set out:

> "3. On July 17, 1972 had the defendant completely disposed of plaintiff's case by dismissal plus a Separation Agreement as set forth in the defendant's letter of July 17, 1972?"

> "Defendant thought the separation agreement and the stipulation of dismissal had been signed. Unknowingly to defendant, plaintiff's wife had not signed the separation agreement, although her attorney had signed the stipulation of dismissal to District Court action."

> "4. If the answer to the foregoing is in the negative, state whether or not it is a customary and accepted practice by attorneys to write such a letter to a client as was contained in Exhibit D to the Complaint."

> "Under these circumstances, yes."

"5. As of October 23, 1972 had the plaintiff's wife actually signed the Deed of Separation and also a judgment dismissing the nonsupport action against the plaintiff as represented in the defendant's letter of October 23, 1972, Exhibit E to the Complaint?"

"No."

"6. If the answer to the foregoing interrogatory is in the negative, is it customary and accepted practice by attorneys to write such a letter as the letter of October 23, 1972 to a client?"

"My letter of October 23, 1972 attempted to set forth my advice to the plaintiff in regard to his inquiries contained in his letter of October 14, 1972 concerning his obtaining a divorce from his wife. I had been assured by the attorney representing Mrs. Elizabeth Carroll that the matter was settled and there would be no further disputes between plaintiff and his wife which, up to the date of the signing of these interrogatories, proved correct. At the time this letter was prepared, Attorney Cavendish advised me that the stipulation of dismissal had been signed by him and that no further actions would be taken by Mrs. Carroll against either William Carroll or Mrs. Gwendolyn Pryor. A portion of my letter of October 23, 1972 was in error based upon my honest belief and upon assurances to me that the entire matter was settled and all documents were to be signed. In fact the stipulation of dismissal had been signed by Mrs. Carroll's attorney."

"18. Why did the defendant write the plaintiff telling him that the Deed of Separation had been signed and that the Judgment of Dismissal had been signed when the defendant knew or should have known that such statements were false and misleading?"

"Defendant thought that plaintiff's wife had signed the instruments. See preceding answers for full explanation of circumstances."

"29. Since the institution of this action, what disposition, if any, has been made concerning the suit which was pending in Pitt County against the plaintiff herein for alimony, etc.?"

"This action has been dismissed."

"30. If the said action has been dismissed, who set the same for hearing or disposition and was either the within plaintiff or the plaintiff's wife notified of the setting of the case for disposition?"

"At my request, the matter was set for hearing by Judge J. W. H. Roberts. Under the North Carolina Rules of Civil Procedure, written notice of the motion for summary judgment was mailed to plaintiff's wife."

"31. What was the final disposition, if any, of the alimony case?"

"Summary judgment was entered in favor of William F. Carroll, dismissing his wife's action against him."

In response to defendant's motion for summary judgment plaintiff filed an affidavit in which he reiterated the allegations of the complaint and the matters raised by interrogatories and stated:

"My agreement with the Defendant was that my wife was not to receive the check until all instruments were executed by her and if he decided to breach his fiduciary duty to me and was negligent in the closing of the transaction, I consider the Defendant responsible for the consequences."

In support of his motion, defendant filed affidavit of M. E. Cavendish, attorney of Greenville, the pertinent portions of which are as follows:

"Prior to August, 1971, I was retained to represent Mrs. Elizabeth R. Carroll, in connection with a domestic dispute with her husband, William F. Carroll. On or about August 13, 1971, I instituted a civil action on behalf of my client, Elizabeth R. Carroll, against William F. Carroll in Pitt County District Court, seeking alimony pendente lite, permanent alimony, attorney fees and court costs. Defendant, William F. Carroll filed answer in this action through his attorney, H. Horton Rountree.

While this action was still pending in Pitt County District Court, I conferred on numerous occasions with attorney H.

Horton Rountree concerning a settlement of this marital dispute. In the spring of 1972, settlement was arrived at whereby Elizabeth R. Carroll was to sign a stipulation dismissing the Pitt County District Court domestic case, a separation agreement to be prepared by me and a land deed in connection with land owned by the Carroll heirs.

Attorney H. Horton Rountree was to prepare the land deed for the signature of Elizabeth R. Carroll and was to deliver to me the settlement check of $10,969.01. I was to prepare the separation agreement and the stipulation of dismissal.

In June, 1972, my office received the settlement check and Mrs. Carroll executed the land deed. I had prepared the separation agreement and stipulation of dismissal which had been forwarded to attorney H. Horton Rountree for his signatures and the signatures of his client. Unknowingly to me, Mrs. Elizabeth Carroll stopped by my office in my absence at which time her settlement funds were given to her by my secretary.

Subsequently, I received from attorney H. Horton Rountree the stipulation of dismissal of the Pitt County District Court action and the separation agreement bearing the signatures of Mr. Rountree and his client.

Subsequent to receiving these signed instruments, I made efforts to have Mrs. Carroll come back to my office to sign the stipulation of dismissal and the separation agreement, but she failed to do so. At no time did Mrs. Carroll specifically tell me that she would not sign the stipulation of dismissal or the separation agreement but she just never came to the office to sign these agreements.

Sometime in the late summer or the fall of 1972, I advised Mr. Rountree that Elizabeth Carroll had not yet come to my office to sign the stipulation of dismissal or the separation agreement. Again, at this time, Mrs. Carroll never advised me that she did not intend to sign the stipulation of dismissal or the separation agreement."

In a separate affidavit, Mr. Cavendish stated that it was not until 13 January 1975, that he "pulled his file" on Elizabeth Carroll in response to a telephone request for information by Mr. Nye and

found note written by his former secretary concerning Mrs. Carroll's refusal to sign certain documents.

Defendant also filed his own affidavit, the pertinent portions of which are as follows:

"On or prior to August, 1971, I was retained to represent William F. Carroll in an action instituted by his wife, Elizabeth R. Carroll against him. The nature of the action was for alimony, attorney fees and court costs. I proceeded to file answer to this which was pending in Pitt County District Court.

During the early part of 1972, William F. Carroll requested that I talk with his wife's attorney, M. E. Cavendish, concerning the possibility of negotiating a settlement with his wife. I then proceeded negotiations with Mr. Cavendish toward a settlement of not only the domestic matters but also a land transaction in which William F. Carroll and the Carroll heirs proposed to transfer a tract of land which needed the signature of Elizabeth Carroll.

While the Pitt County District Court action was still pending, a settlement was agreed upon between William F. Carroll and Elizabeth R. Carroll through their attorneys of all marital problems and the land transaction. This settlement occurred sometime in the spring of 1972. This agreement provided that Elizabeth R. Carroll was to sign the stipulation of dismissal, dismissing the Pitt County District Court domestic case, sign a separation agreement to be prepared by Mr. Cavendish, and to sign a land deed in connection with the land owned by the Carroll heirs.

I was to prepare the land deed for the signature of Elizabeth R. Carroll and was to deliver to Mr. M. E. Cavendish the settlement check of $10,969.01. Mr. M. E. Cavendish was to prepare the separation agreement and stipulation of dismissal for the signatures of both he and his client.

In June, 1972, the settlement check was delivered to Mr. Cavendish's office and Mrs. Carroll executed the land deed. Mr. Cavendish prepared the separation agreement and stipulation of dismissal which was forwarded to my office for signatures by both myself and my client, William Carroll. I

later was advised that while Mr. M. E. Cavendish was absent from his office, Mrs. Elizabeth Carroll stopped by his office and her settlement funds were disbursed to her by Mr. Cavendish's secretary.

The delivery of the settlement check to the office of Mr. M. E. Cavendish was done pursuant to the method and means agreed upon in accomplishing this settlement. It is both customary and the accepted practice by the attorneys in Eastern North Carolina and particularly in Pitt County, that settlement checks are forwarded to the receiving client's attorney, who in turn will be responsible for obtaining his client's signatures to the agreed documents before the disbursement of such funds. Although the funds were disbursed to Mrs. Elizabeth Carroll before she executed the separation agreement and the stipulation of dismissal, this was done without Mr. Cavendish's knowledge and while he was not present in his office."

Assuming that the pleadings are sufficient to allege punitive damages and assuming that the attorney-client relationship existed between plaintiff and defendant on 17 July 1972 and 23 October 1972, (when defendant advised plaintiff that the deed of separation had been signed) raising a presumption of fraud, we think any such presumption has been rebutted. Nowhere does plaintiff allege that defendant benefited from the alleged fraudulent misrepresentation. The statement of accounting reflects that the $500 attorney fee was for "Appearance in court; drawing suit papers; deed of separation; deed and dismissal order; conferences with client and opposing attorney, etc." These services were performed. Nothing in the record suggests that $500 was excessive compensation for these services. Defendant readily admits that his statements to plaintiff were not true, but he also says that he "thought that plaintiff's wife had signed the instruments" and that the agreed method of handling and closing the matter was "both customary and the accepted practice by the attorneys in Eastern North Carolina and particularly in Pitt County." It is uncontroverted that as soon as defendant learned that plaintiff's wife had failed and refused to sign the deed of separation, he initiated procedures, with notice to plaintiff's wife, to dismiss the action against defendant. It is also undisputed that plaintiff obtained his divorce without intervention by his wife. We

cannot perceive any intent to defraud plaintiff on the part of defendant. On the contrary, it appears to us abundantly clear that there was no intent to defraud. We reiterate what we said in *Carroll v. Rountree*, 34 N.C. App. at 176 and 177, 237 S.E. 2d at 573:

> ". . . Plaintiff presented nothing to the contrary—either by his affidavit or by the interrogatories and defendant's answers thereto. It is clear that had the same evidence been presented at trial defendant would have been entitled to a directed verdict in his favor with respect to claim for punitive damages. The court, therefore, properly allowed defendant's motion for summary judgment as to this phase of the lawsuit, since the plaintiff neither showed that additional affidavits with respect to this question were at that time unavailable to him nor came forward with affidavits or other materials showing that he was entitled to have an issue presented to the jury as to punitive damages. *First Fed. Sav. & Loan Assn. v. Branch Banking & Trust Co.*, 14 N.C. App. 567, 188 S.E. 2d 661 (1972), *rev'd on other grounds* 282 N.C. 44, 191 S.E. 2d 683 (1972); *see also Millsaps v. Wilkes Contracting Co.*, 14 N.C. App. 321, 188 S.E. 2d 663 (1972), *cert. den.* 281 N.C. 623, 190 S.E. 2d 466 (1972)."

The Court, in *Frank H. Connor Company v. Spanish Inns Charlotte, Limited et al*, 294 N.C. 661, 242 S.E. 2d 789 (1978), said:

> "Rule 56(e) requires that if a defendant, opposing a plaintiff's motion, has a plausible defense as regards an issue, he must assert it, or he must utilize Rule 56(f) to show the court why he cannot oppose it. When the movant's affidavits do not adequately support the motion, there may be no reason to file opposing affidavits. *See Page v. Sloan*, 281 N.C. 697, 190 S.E. 2d 189 (1972). However, when the moving party presents an adequately supported motion, the opposing party must come forward with facts, not mere allegations, which controvert the facts set forth in the moving party's case, or otherwise suffer a summary judgment. *See Nasco Equipment Co. v. Mason, supra* [291 N.C. 145, 229 S.E. 2d 278 (1976)]."

As we previously noted, plaintiff has not come forward with any facts; he has relied upon mere allegations. Inasmuch as defendant has come forward with facts clearly establishing the absence of

fraud and plaintiff has come forward with no facts, we must conclude that summary judgment as to the issue of fraud was properly entered.

Our position with respect to the count for punitive damages is certainly not to be taken as condoning the failure of Mr. Rountree to follow up on his reliance on Mr. Cavendish to get the documents properly signed by plaintiff's wife. Nor do we approve Mr. Cavendish's neglect of the duties imposed upon him. Nevertheless, in our opinion, any presumption of fraud arising from the relationship between plaintiff and defendant has, in our opinion, been adequately rebutted by undisputed evidence.

Plaintiff's remaining argument in his brief on rehearing is addressed to Count II of plaintiff's complaint wherein he sought damages for mental and emotional distress suffered by him. He contends on rehearing, as he did on appeal, that the trial court erred in entering summary judgment for defendant. As to this we conclude that the contentions of plaintiff were adequately discussed in *Carroll v. Rountree, supra*. We have been shown no reason on rehearing that that discussion should be amplified, modified, or clarified.

As to questions raised by petition to rehear, the judgment of the trial court and the opinion of this Court are

Affirmed.

Judges PARKER and CLARK concur.