[No. D006879. Fourth Dist., Div. One. Sept. 28, 1989.]

CHESTER A. HOLLIDAY, Plaintiff and Appellant, v.
OTIS L. JONES et al., Defendants and Appellants.

104

COUNSEL

Richard H. Benes, Thomas M. Fiorello and Benes & Fiorello for Plaintiff and Appellant.

Barry R. Levy, Sharon Munson Swanson, Horvitz & Levy, Kent L. Richland, Greines, Martin, Stein & Richland, Douglas R. Reynolds, James J. Wallace II and Jennings, Engstrand & Henrikson for Defendants and Appellants.

Daniel L. Gardner, Douglas R. Irvine and Parkinson, Wolf, Lazar & Leo as Amici Curiae on behalf of Defendants and Appellants.

OPINION

**WIENER, Acting P. J.**—This legal malpractice case resulting in a judgment of approximately $1.1 million, in favor of the plaintiff, Chester A. Holliday, is the aftermath of the events described in our unpublished opinion in *People* v. *Holliday,* reversing Holliday's conviction of involuntary manslaughter relating to the killing of his wife. (See *People* v. *Holliday* (Jan. 12, 1984) 4 Crim. Nos. 13844 & 15645.) We reversed on the ground Holliday's defense counsel Otis L. Jones was incompetent. (See *People* v. *Holliday, supra.*) Represented by different counsel on retrial Holliday ,was

acquitted. Holliday then filed this action against Jones, Jones's law partner, Douglas A. Oden, and the partnership, Jones & Oden, for himself and his minor children, Esther and Chester (C. J.), seeking damages for professional negligence, and negligent and intentional infliction of emotional distress. The ensuing court trial was limited to Holliday's cause of action for professional negligence and the children's cause of action for negligent infliction of emotional distress. Defendants had earlier successfully demurred to Holliday's causes of action for negligent and intentional infliction of emotional distress and the children's cause of action for professional negligence. Holliday voluntarily dismissed the children's cause of action for intentional infliction of emotional distress.

Preceding trial the court found Jones was liable to Holliday as a matter of law based on the facts set out in our opinion reversing Holliday's conviction. The court awarded Holliday $629,173.53 general and special damages, including $400,000 for emotional distress and $150,000 for each Holliday child for negligently inflicted emotional distress. The defendants appeal the judgment entered on the court's statement of decision. Holliday cross-appeals from the order sustaining the defendants' demurrer without leave to amend to his cause of action for intentional infliction of emotional distress.

### Defendants' Appeal

The defendants ask us to reduce the judgment by $700,000—$300,000 because Jones's liability for legal malpractice in representing Holliday does not extend to Holliday's children, and an additional $400,000 because Holliday's damages for emotional distress may not be premised on attorney malpractice. As we shall explain, we partially agree. ■ We conclude the scope of an attorney's duty in representing a client in a criminal case does not include responsibility to the client's family members, whom the attorney does not represent, for emotional distress damages resulting from the attorney's failure to perform competently on behalf of the client. Accordingly, we modify the judgment by eliminating the damages awarded to the Holliday children.

■ We reject the defendants' argument as to Holliday, however, concluding that there is no reason to deny damages to a client, including damages for emotional distress, proximately caused by the attorney's negligence in failing to perform as a reasonably competent defense lawyer in a criminal case. We therefore hold that Holliday is entitled to the $400,000 he was awarded for the emotional distress damages he suffered as a direct result of Jones's professional negligence. As so modified we affirm the judgment.

## I

 The trial court's decision to award $150,000 damages for the emotional distress suffered by each Holliday child was based on its conclusion the risk of such harm was foreseeable to Jones in accordance with the California Supreme Court decisions in *Molien* v. *Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916, 923 [167 Cal.Rptr. 831, 616 P.2d 813, 16 A.L.R.4th 518] and *Hedlund* v. *Superior Court* (1983) 34 Cal.3d 695, 704-706 [194 Cal.Rptr. 805, 669 P.2d 41, 41 A.L.R.4th 1063]. The defendants challenge this conclusion by asserting Jones's professional obligation to Holliday did not encompass a duty to Holliday's children.[1]

Initially we wish to emphasize the evidence in this case clearly establishes Jones's negligence caused the Holliday children to suffer emotional distress. Even Jones acknowledges this fact stating "although not direct victims [of his negligence], [the Holliday children] foreseeably suffered emotional distress from that negligence as well."

Esther Holliday was 10 years old when her father was convicted. C. J. was a year younger. Jones knew these children were dependent on their father for all aspects of their support—emotional as well as financial. They visited their father in jail about every other week, seeing him in his jail uniform, and speaking to him through a telephone in the presence of others. The visits lasted for about 20 minutes. The children worried about how long they would be separated from their father and how and where they would live during this period. They resided at seven different locations during their father's incarceration. Their schoolmates asked them embarrassing questions and their schoolwork suffered dramatically.

Thus in the discussion which follows there is no need for us to dwell on either the legitimacy or foreseeability of the children's emotional distress. The Holliday children are indeed sympathetic victims who have suffered as a foreseeable result of Jones's negligence. Is anything more required for Jones's liability? We believe so.

---

[1] In a prior writ petition to this court following the overruling of his demurrer, Jones argued that the Holliday children had not stated a cause of action for negligent infliction of emotional distress. We summarily denied the petition with the comment, "[T]here [is] no showing of an abuse of discretion at the pleading stage." The children now assert that this denial constitutes the law of the case and precludes Jones from raising the issue on appeal. (See, e.g., *Richer* v. *Superior Court* (1976) 63 Cal.App.3d 748 [134 Cal.Rptr. 52].) We disagree. Although the order might have been more artfully phrased, our clear intent was to decline Jones's invitation to resolve the issue at the pleading stage because the impact of that issue on the case in terms of time, complexity, etc., did not warrant pretrial review. We by no means intended to suggest that the issue could not be considered on appeal following a final judgment.

In *Dillon* v. *Legg* (1968) 68 Cal.2d 728 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316], the California Supreme Court held that a mother could recover from a negligent motorist for the emotional distress she suffered from witnessing the accident that caused the death of her child. Although the court included a number of factors designed to limit liability, the threshold consideration and the chief element in establishing liability was the foreseeability of the injury. (*Id.* at pp. 740-741.)

In *Molien* v. *Kaiser Foundation Hospitals, supra,* 27 Cal.3d 916, the court held that a husband could recover from his wife's doctor for the emotional distress she suffered from the misdiagnosis of his wife as having syphilis and the advice that he be physically examined as well. The court reasoned that the husband was a "direct victim" of the tort in view of the nature of the doctor's conduct holding that defendant owed the husband a duty of care. (*Id.* at p. 923.)

These cases permitted recovery of emotional distress damages to a "bystander" or a "direct victim" in certain circumstances. Defining those circumstances was at best difficult and the distinction between the cases unclear with one appellate court saying the difference was an "amorphous nether realm." (*Newton* v. *Kaiser Foundation Hospital* (1986) 184 Cal.App.3d 386, 391 [228 Cal.Rptr. 890].) In addition to the doctrinal confusion, many highly respected legal commentators, including California's renowned scholar Bernard Witkin, expressed concern over potential costs, particularly when it appeared that on a clear judicial day courts could foresee forever. (See *Thing* v. *La Chusa* (1989) 48 Cal.3d 644, 668 [257 Cal.Rptr. 865, 771 P.2d 814].)

Two recent California Supreme Court decisions, *Marlene F.* v. *Affiliated Psychiatric Medical Clinic, Inc.* (1989) 48 Cal.3d 583 [257 Cal.Rptr. 98, 770 P.2d 278] and *Thing* v. *La Chusa, supra,* 48 Cal.3d 644, however, have placed definite limitations on the doctrinal and financial "slippery slopes" of *Dillon* and *Molien*.

*Marlene F.* holds the mother of a minor child can state a claim for negligent infliction of emotional distress against the psychotherapist who, after being consulted to treat both mother and son, sexually molested the boy. (48 Cal.3d at pp. 585, 590-592.) *Marlene F.* emphasizes, however, " '*negligent* causing of emotional distress is not an independent tort but the tort of *negligence* . . . .' (6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 838, p. 195.)" (*Id.* at p. 588.) After reviewing its decisions in *Dillon* and *Molien, Marlene F.* explains *Molien* "did *not,* however, purport to create a cause of action for the negligent infliction of emotional distress based *solely upon the foreseeability* that serious emotional distress might

result. It is plainly foreseeable, for example, that close family members of a patient would suffer severe emotional distress if told the patient had been diagnosed as suffering from a terminal illness, but without more, the patient's physician would not be liable for that distress whether or not the diagnosis was erroneous. [Citation.] Damages for severe emotional distress, rather, are recoverable in a negligence action when they result from the breach of a duty owed the plaintiff that is assumed by the defendant or imposed on the defendant as a matter of law, or that arises out of a relationship between the two." (*Id.* at pp. 589-590, italics added.)

*Thing* v. *La Chusa, supra,* 48 Cal.3d 644,—a "bystander" case—further clarifies, and narrows, the scope of liability for negligent infliction of emotional distress. The court states "it is clear that foreseeability of the injury alone is not a useful 'guideline' or a meaningful restriction on scope of the [negligent infliction of emotional distress] action. The *Dillon* experience confirms . . . that '[f]oreseeability proves too much. . . . Although it may set tolerable limits for most types of physical harm, it provides virtually no limit on liability for nonphysical harm.' [Citation.] It is apparent that reliance on foreseeability of injury alone in finding a duty, and thus a right to recover, is not adequate when the damages sought are for an intangible injury. In order to avoid limitless liability out of all proportion to the degree of a defendant's negligence, and against which it is impossible to insure without imposing unacceptable costs on those among whom the risk is spread, the right to recover for negligently caused emotional distress must be limited."[2] (*Thing, supra,* at pp. 663-664.)

*Thing* refers to *Borer* v. *American Airlines, Inc.* (1977) 19 Cal.3d 441 [138 Cal.Rptr. 302, 563 P.2d 858] to illustrate when judicial limitation of damages is appropriate. *Borer* refused to recognize a child's right to recover for the loss of a parent's consortium. The rationale for refusing to extend liability was that damages were difficult to measure, of questionable

[2] Emphasizing that considerations of *policy* are paramount, *Thing* states: The " 'social burden of providing damages [could not be ignored] merely because the money to pay such awards comes initially from the "negligent" defendant or his insurer. Realistically the burden . . . must be borne by the public generally in increased insurance premiums or, otherwise, in the enhanced danger that accrues from the greater number of people who may choose to go without any insurance. We must also take into account the cost of administration of a system to determine and pay [the] awards; . . .' [Citation]" (*Thing, supra,* 48 Cal.3d at p. 665.)

"No policy supports extension of the right to recover for [negligent infliction of emotional distress] to a larger class of plaintiffs. Emotional distress is an intangible condition experienced by most persons, even absent negligence, at some time during their lives. Close relatives suffer serious, even debilitating, emotional reactions to the injury, death, serious illness, and evident suffering of loved ones. These reactions occur regardless of the cause of the loved one's illness, injury, or death. That relatives will have severe emotional distress is an unavoidable aspect of the 'human condition.' . . . The overwhelming majority of 'emotional distress' which we endure, therefore, is not compensable." (*Id.* at pp. 666-667.)

recompense and resulted in inordinate costs. (*Thing, supra,* 48 Cal.3d pp. 664-665; *Borer, supra,* at p. 444.)

Perhaps the resolution of this issue would be more difficult if Holliday had been wrongfully convicted of murdering his children, and his wife sought to recover for her emotional distress. (Cf. *Rodriguez* v. *Bethlehem Steel Corp.* (1974) 12 Cal.3d 382 [115 Cal.Rptr. 765, 525 P.2d 669].) Here, however, we are squarely confronted with the policy decision made by the Supreme Court in *Borer* that, in contrast to spouses, children should not be able to recover loss of consortium damages resulting from injury to a parent. Much of the emotional injury alleged by Esther and C. J. is similar if not identical to that they would have suffered had their father been hospitalized after a serious injury.[3] In one sense, it is even less compensable. Unlike a *Borer* situation, the emotional distress suffered by the Holliday children here was not wholly caused by the tortfeasor's negligence. We assume that part—perhaps a substantial part—of their anguish was their awareness that their father was officially accused of murdering their mother and was required to defend against that charge in a public forum. Even if Holliday had been represented by competent counsel in his first trial, his children would have suffered the distress naturally associated with such proceedings.[4]

The children forcefully urge that despite the implications of *Borer,* the Supreme Court's decision in *Hedlund* v. *Superior Court* (1983) 34 Cal.3d 695 [194 Cal.Rptr. 805, 669 P.2d 41, 41 A.L.R.4th 1063] compels affirmance of the award in their favor. The plaintiffs in *Hedlund,* LaNita Wilson and her three-year-old son Darryl, sued two psychologists alleging they failed to warn LaNita that a patient had threatened to inflict serious bodily injury on her. Later, she suffered serious injuries when the patient assaulted her with a shotgun. Darryl was spared bodily injury when LaNita threw herself over him to shield him from the gunshot. Not surprisingly, however, he suffered serious emotional disturbance as a result of the incident and sought compensation from the psychologists. The Supreme Court upheld the trial court's decision to overrule the defendant-psychologists' demurrer to Darryl's cause of action for negligent infliction of emotional distress.

*Hedlund* is an almost classic illustration of the "zone of danger" limitation doctrine rejected in *Dillon* v. *Legg, supra,* 68 Cal.2d 728, 732-733. To

---

[3] It is true the children have alleged a type of injury to their reputation which was not present in *Borer*. If anything, however, such injury is more speculative than the loss of comfort and society, compensation for which was rejected by the *Borer* court.

[4] We do not mean to suggest that the Holliday children were awarded damages for distress not attributable to Jones's negligence. The trial judge made it clear he understood that only postconviction distress was compensable. We only point out that where emotional distress is of a continuing nature, it may be difficult, as a practical matter, to differentiate the compensable distress from that which cannot be compensated.

the extent Darryl sought to recover based on his fear for his own safety, a cause of action was arguably stated even under pre-*Dillon* law. And clearly post-*Dillon,* a child in Darryl's position could state a cause of action to recover for the distress suffered in observing the attack on his mother. We are therefore not surprised that the Supreme Court in *Hedlund* deemed the result "compelled by *Dillon* . . . ." (*Id.* at p. 706.) As we read *Hedlund,* it is most appropriately viewed simply as an application of *Dillon* to a somewhat different fact pattern.

The Holliday children dispute the characterization of *Hedlund* as a *Dillon* case, pointing to parts of the opinion where the court cited *Molien* v. *Kaiser Foundation Hospitals, supra,* 27 Cal.3d 916—a so-called "direct victim" case—in support of its holding. They argue that the Supreme Court in *Hedlund* viewed Darryl as a direct victim of the psychologists' negligent failure to warn just as they are direct victims of Jones's malpractice.

The two cryptic references to *Molien* in the *Hedlund* opinion do not suggest to us that the Supreme Court viewed *Hedlund* as a "direct victim" case. In footnote 8, the court cited *Molien* for the proposition that Darryl's allegations of emotional trauma unaccompanied by physical injury were sufficient under *Molien.* It will be recalled that for all its groundbreaking legal analysis, *Dillon* retained the requirement that the emotional shock result in physical injury. (See 68 Cal.2d at p. 740.) Later in the *Hedlund* opinion, the facts of the case are compared to *Molien* to support the conclusion that the injury in *Hedlund* was foreseeable. Foreseeability, of course, was a critical factor in *Dillon* as well. The fact that *Molien* was mentioned in this context does not indicate that the Supreme Court viewed *Hedlund* as other than a bystander situation.

Our conclusion is supported by the Supreme Court's later decision in *Ochoa* v. *Superior Court* (1985) 39 Cal.3d 159 [216 Cal.Rptr. 661, 703 P.2d 1]. There, a mother and father sued local government officials for the emotional distress they suffered watching their minor son die while confined in a local juvenile detention facility. The parents alleged their son's death was due to the defendants' failure to provide proper medical attention. The Supreme Court allowed the parents' *Dillon*-based bystander cause of action to proceed but at the same time rejected an argument that they were "direct victims" of the defendants' negligence within the meaning of *Molien.* According to the *Ochoa* majority, the theory of *Molien* applies only where the defendant's tortious conduct is in some sense directed at both the plaintiff and the primary victim. (39 Cal.3d at p. 172.) In *Hedlund,* as here, the plaintiff was a foreseeable victim solely because of his relationship to the primary victim.

We are frank to admit that *Dillon, Molien* and to a lesser extent *Hedlund* can be read to suggest an expansive new rule in which the only limitation on the recovery of negligently inflicted emotional distress damages is the principle of foreseeability. In such a legal environment, the categories of "direct victims" and "bystanders' would be unnecessary. They are, in a sense, arbitrary limitations on the recovery of compensation for damages which, to the individual plaintiff involved, are very real. Clearly, however, our emotional distress vistas have been restricted by recent cases such as *Ochoa, Marlene F.* and *Thing.* As both *Marlene F.* (a "direct victim" case) and *Thing* (a "bystander" case) make clear, foreseeability is not the only consideration. The Supreme Court has made a policy determination that the costs associated with attempting to compensate intangible losses are socially significant and can no longer be ignored. The lines are being drawn; the question is simply one of location.

■ If the results in these cases can be synthesized, it would appear that in order to recover for negligently inflicted emotional distress damages, a plaintiff must either have a special relationship to the defendant (*Marlene F.*), be the direct object of some aspect of the defendant's conduct (*Molien*) or personally witness a negligently caused physical injury to a closely related primary victim (*Dillon; Ochoa; Thing*). Beyond these categories, the only exception seems to be the recovery by spouses of loss of consortium damages. (*Rodriguez* v. *Bethlehem Steel Corp., supra,* 12 Cal.3d 382.)

Here, the Holliday children had no contractual or other relationship with Jones. Nor can his malpractice in any sense be viewed as being "directed" at them in the same way as the doctor's conduct in *Molien* where, as has been emphasized in later cases, the wife's physician directed that the misdiagnosis be communicated to the plaintiff-husband and instructed that he be physically examined. (See, e.g., *Marlene F., supra,* 48 Cal.3d at pp. 589, 590; *Ochoa, supra,* 39 Cal.3d at pp. 172-173.) Finally, the children did not witness a physical injury to their father and have never claimed entitlement to recovery based on *Dillon*'s bystander criteria.

What remains, of course, is the limited exception for loss of consortium damages carved out by *Rodriguez* and narrowly circumscribed by *Borer.* We cannot see how a rational standard could exist which would award emotional distress damages to the Holliday children and at the same time deny them to children of parents who are physically injured. While not the determinative consideration, we also note that the availability of such damages is unnecessary to effectively deter legal malpractice. The lawyer's liability to his client for damages including punitive damages—as well as the prospect of professional discipline—should provide sufficient incentive for him to perform in a professionally responsible manner. It is illogical to

think that a lawyer will or should perform "more" professionally depending on how many children the client has.

 In light of the foregoing California Supreme Court decisions and the policy considerations outlined above, we hold the Holliday children are not entitled to recover damages for the negligently inflicted emotional distress caused by Jones's conduct. We modify the judgment accordingly.

## II

 The trial court based its decision to award Holliday $400,000 for the emotional distress he suffered as a result of Jones's negligence on *Molien* v. *Kaiser Foundation Hospitals, supra,* 27 Cal.3d 916, and *Betts* v. *Allstate Ins. Co.* (1984) 154 Cal.App.3d 688 [201 Cal.Rptr. 528]. As was true with regard to the first issue, defendants appropriately concede Holliday in fact suffered substantial and severe emotional distress.[5] They nonetheless forcefully argue the trial court erred in awarding damages for such distress, directing us to *Quezada* v. *Hart* (1977) 67 Cal.App.3d 754 [136 Cal.Rptr. 815] and what they describe as the majority rule which denies damages for emotional distress in a legal malpractice action except upon a showing of affirmative misconduct or bad faith.[6] As we shall explain, however, we think

---

[5] The concession is well advised. After the jury found Holliday guilty, he was restrained in his seat by two deputies, handcuffed in front of his family, led out of the courtroom and taken to jail. He was degraded, humiliated and ashamed. Jones had not told Holliday he was not facing the death penalty. Holliday's anxiety on this point was lessened only after he checked the Penal Code in the law library at the county jail. In the "holding tank" he was strip-searched in a room with about 20 other people. Assigned to a cell, his cellmate (nicknamed "Monster" for apparently very good reasons) objected to Holliday, saying he was too old and sick. "Monster" preferred younger men with whom he could have sex.

Holliday's second cellmate, a paranoid schizophrenic, needed daily medication to avoid becoming violent. Sometimes four inmates were assigned to the cell, requiring that two of the inmates sleep on the floor. Neither the toilet, located on a wall of the cell, nor the shower facilities were private. Holliday was strip-searched on a weekly basis in a room with a number of other naked inmates. When Holliday's children visited him, he could see them only through an eight-inch-by-eight-inch window.

[6] The defendants make this statement relying on the authority cited in Mallen and Levit, Legal Malpractice (2d ed. 1981) section 310, pages 362-363, referring us to *Garris* v. *Schwartz* (7th Cir. 1977) 551 F.2d 156; *Selsnick* v. *Horton* (1980) 96 Nev. 944 [620 P.2d 1256]; *Caddel* v. *Gates* (1984) 284 S.C. 481 [327 S.E.2d 351]; *Hilt* v. *Bernstein* (1985) 75 Ore.App. 502 [707 P.2d 88]; *Green* v. *Leibowitz* (1986) 118 App.Div.2d 756 [500 N.Y.S.2d 146]; *Perkio* v. *Prunier* (1981) 121 N.H. 871 [436 A.2d 72]; *McClain* v. *Faraone* (Del. Super. 1977) 369 A.2d 1090; *Deno* v. *Transamerica Title Ins. Co.* (1980) 126 Ariz. 527 [617 P.2d 35]; *Hamilton* v. *Powell, Goldstein, Frazier and Murphy* (1983) 167 Ga. 149 [306 S.E.2d 340], affirmed (1984) 252 Ga. 149 [311 S.E.2d 818]; *Carroll* v. *Rountree* (1977) 34 N.C.App. 167 [237 S.E.2d 566], affirmed on rehearing 36 N.C.App. 156 [243 S.E.2d 821], certiorari denied 295 N.C. 549 [248 S.E.2d 725]; *Gautam* v. *De Luca* (1987) 215 N.J.Super. 388 [521 A.2d 1343]; and *Gay* v. *McCaughan* (5th Cir. 1959) 272 F.2d 160. Although we eschew discussing all of the foregoing cases we are familiar with their holdings in addition to other authorities cited in the third edition of

the Supreme Court's reasoning in *Molien* casts doubt on the continuing vitality of the *Quezada* holding. In any event, even if *Quezada* were to survive *Molien* and *Betts,* we believe it is distinguishable and the so-called majority rule is inapplicable to the circumstances of this case.

## A

In *Quezada,* plaintiffs' underlying quiet title action to secure the family home was dismissed after the defendant attorneys negligently failed to bring it to trial within five years. In addition to special economic damages, the plaintiffs sought general damages in the form of emotional distress. Denying recovery for the emotional distress damages, the *Quezada* court cited the general rule then applicable in California that "emotional suffering damages [are limited] to cases involving either physical impact and injury to plaintiff or intentional wrongdoing by defendant." (67 Cal.App.3d at p. 761.) The court then distinguished several recent cases which appeared to allow broader recovery, concluding that although the tortfeasor's conduct was "negligent as a matter of law, [it] contain[ed] elements of intentional malfeasance or bad faith." (*Ibid.*)

In *Molien* v. *Kaiser Foundation Hospitals, supra,* 27 Cal.3d 916, the Supreme Court abrogated the common law rule that emotional distress damages were not recoverable in a negligence action absent accompanying physical injury. *Molien* arose in the context of a physician's negligent misdiagnosis of plaintiff's wife as suffering from syphilis. As a result of the diagnosis, plaintiff was required to be tested. Although the tests proved negative, the mutual suspicion engendered by the misdiagnosis caused the breakup of the marriage. The court concluded, "[E]motional injury may be fully as severe and debilitating as physical harm, and is no less deserving of redress; the refusal to recognize a cause of action for negligently inflicted injury in the absence of some physical consequence is therefore an anachronism." (*Id.* at p. 919.)

Defendants assert that *Molien* is not a legal malpractice case and therefore does not necessarily overrule *Quezada* and control the decision in this case. While facially accurate, this assertion ignores the fact that *Quezada* did not purport to establish a special rule for legal malpractice cases. Instead, it was clearly based on the "physical injury" rule expressly disapproved in *Molien.*

In any event, this court applied *Molien* to a legal malpractice case in *Betts* v. *Allstate Ins. Co., supra,* 154 Cal.App.3d 688, affirming an award of

---

the treatise (Mallen & Smith, Legal Malpractice (3d ed. 1989) §§ 16.11-16.12, pp. 904-906, fns. 1-8).

emotional distress damages against attorneys who breached their obligations to their client in order to protect the interests of the insurance carrier who was paying their fees. Partially as a result of the attorneys' negligence, a judgment substantially in excess of the policy limits was entered against the insured. Regrettably, the opinion in *Betts* did not refer to *Quezada*. Rather, the entire legal discussion on the emotional distress damage issue was limited to a single proposition: "General money damages for the negligent infliction of emotional distress are authorized by law. (*Molien* v. *Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916.)" (*Betts, supra,* 154 Cal.App.3d at p. 717.) The court went on to examine the sufficiency of the evidence to support the award, concluding it was more than adequate. (*Id*. at p. 718.)

Defendants contend that the broad but cryptic statement in *Betts* was dictum because the facts there are properly characterized as "affirmative misconduct" falling within the holding in *Quezada*. Assuming arguendo defendants are correct, it is nonetheless difficult to read *Betts*'s rationale as admitting of such a limitation. Albeit with minimal discussion, the *Betts* court treats *Molien* as having dispensed with the need to find exceptions to the general rule that negligently inflicted emotional distress damages are not recoverable absent physical injury.

More importantly, however, acceptance of defendants' narrow reading of *Molien* and *Betts* would create a special rule benefitting only negligent lawyers. If as a result of improper psychiatric diagnosis an individual is mistakenly committed to a mental hospital, *Molien* plainly allows recovery of emotional distress damages against the negligent psychiatrist. If the same individual is mistakenly committed as a result of the negligence of his lawyer and suffers the same damages, defendants' argument would require that recovery be denied. In our view, not only is such a special interest rule unfair, but public perceptions regarding it poorly serve the broader interests of the legal profession.

### B

It is true that *Quezada* still typifies the majority rule in American jurisdictions. In lawyer malpractice cases alleging negligence in an earlier civil case involving a property interest, recovery of damages for emotional distress is precluded absent intentional or affirmative wrongdoing by the defendant. (See Mallen & Smith, Legal Malpractice, *op cit. supra*, § 16.11, pp. 904-905.) That rule derives, of course, from the even more general rule that emotional distress damages absent physical injury are not recoverable. (See Rest.2d Torts, § 313; Prosser & Keeton, Torts (5th ed. 1984) § 54, p. 361.) It is because *Molien* rejects this more general rule that we question defendants' continued reliance on *Quezada*. Even if *Quezada* were somehow

reconcilable with *Molien* and *Betts,* however, there is ample basis for concluding that the award of emotional distress damages in *this* criminal case was nonetheless appropriate.[7]

*Quezada*'s decision limiting recovery for emotional distress damages unless the attorney defendant committed intentional or affirmative misconduct or bad faith emphasizes the conduct of the attorney defendants. *Quezada* requires something other than "mere" negligence for increased damages. (See *Soto* v. *Royal Globe Ins. Co.* (1986) 184 Cal.App.3d 420, 434 [229 Cal.Rptr. 192].) On the other side of the ledger, however, the plaintiff's interest harmed in *Quezada* is a property interest. Here, in Holliday's criminal trial, a more fundamental and personal right—Holliday's liberty—was at stake. In such circumstances, emotional distress damages necessarily result from the loss of that liberty due to no other reason than lawyer malpractice.

In most of the out-of-state cases to which defendants refer us (see *ante,* fn. 6), the only interest harmed by the attorney's malpractice was a property

---

[7] The reason we have emphasized *this* criminal case is that we are convinced it is indeed sui generis. The parties have not directed us to another legal malpractice case in this country comparable to the one before us. Not only was Holliday's involuntary manslaughter conviction reversed solely because of attorney incompetence, but he was acquitted on retrial. In addition the trial court's ruling finding malpractice as a matter of law is not challenged in this appeal. Thus this case is unlike the model analyzed in the thoughtful law review article by retired California Supreme Court Justice Otto Kaus and Ronald E. Mallen entitled, *The Misguiding Hand of Counsel—Reflections on "Criminal Malpractice"* (1974) appearing in 21 UCLA Law Review 1191. This provocative article highlights the difficulties associated with attempting to fit criminal malpractice litigation into substantive and procedural molds designed for other purposes. The situation postulated in the article, however, is that the "plaintiff in the malpractice action was represented in the trial court by the defendant lawyer throughout the criminal proceedings, which resulted in a conviction now final, either after trial or plea." (*Id.* at p. 1194.) The hypothetical basis for the article requires that there be a trial in the underlying civil action to establish that had the defendant been competently represented an acquittal would have resulted. Obviously that is not the situation in the case here.

Also touched upon in the article is an issue which has admittedly piqued our intellectual curiosity but which was not raised at trial and is not argued here. That is whether there should be recompense when the criminal defendant's actual innocence has not been established. It is conceptually possible for both an innocent person to be convicted and a guilty person to be acquitted. Kaus and Mallen are well aware of this possibility and take pains to explain that "actual guilt" does not mean actual guilt, stating that "no system of procedure and proof can infallibly determine the client's guilt or innocence." (*Id.* at p. 1200, fn. 25.) Nonetheless, as the article suggests, the notion of paying damages to a plaintiff who actually committed the criminal offense solely because a lawyer negligently failed to secure an acquittal is of questionable public policy and is contrary to the intuitive response that damages should only be awarded to a person who is truly free from any criminal involvement. In the present case the defendants have not even hinted that Holliday's "true guilt" should preclude an award of damages to him. Accordingly, our analytical approach in this case has not been constrained by the legitimate concerns prompted by the hypothetical model used by Kaus and Mallen in their discussion of the problems of criminal malpractice litigation following a final judgment of conviction.

interest. Recovery of emotional distress damages was disallowed primarily for that reason and not because the attorney's conduct was insufficiently culpable. For example, in *Hilt* v. *Bernstein, supra,* 707 P.2d 88, the attorney negligently prepared and advised plaintiff to sign a power of attorney which gave her husband power to borrow money, using their house as collateral, and to obligate plaintiff on the loan. As a result plaintiff lost a property interest, i.e., equity in the home. (*Id.* at p. 89.) Recovery for emotional distress was denied with the appellate court focusing on the nature of the plaintiff's invaded interest, not upon the reprehensibility of the defendant's conduct. "The critical inquiry becomes whether the kind of interest invaded is of sufficient importance as a matter of policy to merit protection from emotional impact." (*Id.* at p. 95.) "Plaintiff's invaded interest is solely an economic one," i.e., "the right to share equitably in a marital asset"; and therefore plaintiff could "be adequately compensated by damages for the value of her lost equity and related legal fees." (*Id.* at p. 96.)

Conversely in *McEvoy* v. *Helikson* (1977) 277 Ore. 781 [562 P.2d 540, 544], the Oregon Supreme Court allowed recovery of damages for mental suffering in a legal malpractice action where the plaintiff husband had lost custody of his child as a result of the attorney's negligence. In *Hilt,* the court of appeals distinguished *McEvoy,* reasoning that "the interest invaded was the right to a parental-child relationship" and Hilt's right "to share equitably in a marital asset is *not of comparable magnitude"* (707 P.2d at p. 96, italics added).[8]

Again in *Carroll* v. *Rountree, supra,* 237 S.E.2d 566, plaintiff Carroll's wife had brought an action against him for alimony. Carroll retained Rountree to represent him in the matter. The parties entered into an agreement providing that plaintiff would sell a farm he had inherited. From the proceeds of the sale, Carroll's wife was to receive approximately $11,000 in exchange for deeding a piece of property to plaintiff, signing a separation agreement and dismissing the alimony action. (*Id.* at p. 572.) Rountree allegedly transferred an $11,000 check to Carroll's wife before obtaining the dismissal of alimony action and her signature on the separation agreement. In a malpractice action, Carroll sought among other things, damages in contract for mental anguish. (*Id.* at pp. 571-572.) Again, the appellate court focused on the nature of the plaintiff's invaded interest rather than the reprehensibility of the defendant's conduct, concluding the damaged interest was predominately commercial rather than personal. The court held

---

[8] Interestingly, respected commentators Mallen and Smith acknowledge this distinction in their legal malpractice treatise, referring to "an exception [in] an Oregon decision which permitted recovery where the attorney's conduct interfered with a personal rather than an economic interest, for example, the plaintiff's right to child custody." (Mallen & Smith, *op. cit. supra,* at p. 905.)

contract damages for mental anguish were not recoverable in the context of that case but stated "we readily concede that there could be contracts between attorney and client so personal in nature that the attorney could be assumed to have entered the contract with the knowledge that a failure to fulfill the obligation thereunder in the manner contemplated by the parties would naturally and probably result in the client's suffering mental anguish, . . ." (*Id.* at p. 572.)

If the purpose in prohibiting the award of emotional distress damages absent physical injury or intentional or affirmative misconduct is to screen out fraudulent or speculative claims, the necessity for such screening is simply nonexistent here when loss of liberty and its consequent impact on Holliday is not only a reasonable and foreseeable consequence of Jones's professional incompetence in defending Holliday in his murder trial, but virtually a guaranteed result. The analysis of this issue is thoughtfully discussed in *Wagenmann* v. *Adams* (1st Cir. 1987) 829 F.2d 196.

In *Wagenmann,* the trial court appointed Healy, an experienced criminal lawyer, to represent plaintiff Wagenmann, both sane and innocent, who was charged with various crimes. As a proximate result of Healy's negligence, the plaintiff was required to spend *one* night in a state mental hospital. (829 F.2d at p. 205.) On appeal Healy challenged the $50,000 damages for emotional distress relying in part on *Quezada* v. *Hart, supra,* and *Carroll* v. *Rountree, supra,* contending the plaintiff should not have been permitted to recover for his emotional distress. (829 F.2d at p. 221-222.) The First Circuit Court of Appeals rejected this argument holding that a case "where . . . the lawyer's malpractice results in a loss of liberty" is "completely different" and distinguishable from cases, such as *Quezada* and *Carroll* "where the claimed malpractice involve[d] merely property rights." (*Id.* at p. 222.) Because of the importance of this case, we quote from it at length: "As a direct and proximate result of Healy's ineffectiveness, the plaintiff was forcibly deprived of his liberty and dispatched to a mental hospital. The fright and suffering incident to such a wrenching dislocation can hardly be overstated. Subsequent to his release, [plaintiff] claimed (credibly) to have undergone continuing anguish and to have felt the weight of the stigma attendant to such confinement. He feared that others would learn of it and question his sanity. The district judge instructed the jurors that if they found liability on this count, they could award reasonable damages to compensate for 'any pain, suffering, humiliation and mental anguish' suffered and to be suffered by the plaintiff, caused by Healy's (mis)conduct. We decline the appellant's invitation to relieve him of the foreseeable consequences of his malpractice by the overly simplistic expedient of relabeling the resultant award as damages for 'emotional distress.'

"The thrust of Healy's argument is that Massachusetts law limits recovery for emotionally-based injuries in narrowly constrained ways. We agree, to some extent. But, that generality does not capture the flag. The cases which this appellant cites in an effort to blanket this verdict with his reasoning are inapposite. . . . We offer no opinion on the appropriateness of denying recovery of 'emotional distress' damages in cases where the claimed malpractice involves merely property rights. *See, e.g., Carroll* v. *Rountree,* 34 N.C.App. 167, 237 S.E.2d 566 (1977); *Quezada* v. *Hart,* 67 Cal.App.3d 754 . . . (1977). The situation is completely different where, as here, the lawyer's malpractice results in a loss of liberty.

". . . . . . . . . . . . . . . . . . . . . .

"[T]here is little room to doubt that the harm [plaintiff] suffered due to Healy's bungling was real and significant and that the injury was reasonably foreseeable under the circumstances. Any attorney in Healy's position should readily have anticipated the agonies attendant upon involuntary (and inappropriate) commitment to [the state mental hospital] and the subsequent stigma and fear associated with such a traumatic episode. The damages were therefore recoverable under Massachusetts law.

"Were we to accept the notion that a client's recovery on the grim facts of a case such as this must be limited to purely economic loss, we would be doubly wrong. The negligent lawyer would receive the benefit of an enormous windfall, and the victimized client would be left without fair recourse in the face of ghastly wrongdoing. Despite having caused his client a substantial loss of liberty and exposed him to a consequent parade of horribles, counsel would effectively be immunized from liability because of the fortuity of the marketplace. That Healy was guilty of malpractice in the defense of commitment proceedings, rather than in the prosecution of a civil claim for damages, is no reason artificially to shield him from the condign consequences of his carelessness. We are not required by the law of the commonwealth, as we read it, to reach such an unjust result." (829 F.2d at pp. 221-223.)

We think *Wagenmann*'s reasoning is sound. Admittedly there are cases which reach a contrary result. (E.g., *Hamilton* v. *Powell, Goldstein, Frazier & Murphy, supra,* 306 S.E.2d 340.) In *Hamilton,* the defendant attorney's malpractice caused his client, the chairman of the board of a corporation, to be indicted and prosecuted. The Georgia Court of Appeals reduced a $1 million jury award to $38,206 representing the attorney's fees incurred in defense of the criminal charges, eliminating all damages for loss of reputation, mental and physical strain, and humiliation. Because the plaintiff-client failed to prove the attorney's neglect was "wanton," the court resorted to the general rule that noneconomic damages are not recoverable in the

absence of physical injury. (*Id.* at p. 344; see also *Bowman* v. *Doherty* (1984) 235 Kan. 870 [686 P.2d 112, 119], holding that a client-plaintiff must prove wanton or willful conduct by the criminal defense attorney to recover emotional distress damages for legal malpractice.) As we explained earlier, the physical injury requirement has been eliminated in California. (*Molien* v. *Kaiser Foundation Hospital, supra,* 27 Cal.3d 916.) Even if *Quezada* v. *Hart* remains good law in a post-*Molien* world, *Hamilton* and *Bowman* provide no independent foundational support for rejecting *Wagenmann* and refusing to award emotional distress damages in cases involving the client's loss of a liberty interest.

After surveying the cases decided in other jurisdictions, we are satisfied the recovery of damages for emotional distress in a legal malpractice case— if it is to be limited at all—should turn on the nature of plaintiff's interest which is harmed and not merely on the reprehensibility of the defendant's conduct. Accordingly, in light of Holliday's liberty interest here, we believe California's general rule of damages applies and Jones should be liable for emotional distress damages he caused.

## C

We reach our conclusion in this case acutely aware that in many if not most criminal prosecutions, the defendant is represented by appointed counsel or a public defender and the result of our holding might add further financial burdens to the public fisc. The resolution of this problem, however, is best left to the Legislature which is in a better position than we to determine whether public lawyers should be immune from such damages. Our holding here involving privately retained counsel is necessarily limited to the facts before us.

We have also pondered the chilling effect, if any, this decision may have on the quality of legal representation of defendants in criminal cases. Lacking evidence on this issue, we are unwilling to say as a matter of law that the elimination of a single element of damages would improve the legal representation of criminal defendants by privately retained counsel or, conversely, that failing to limit damages will decrease the quality of representation defendants in criminal cases can and should expect from their privately retained lawyers.

We have also considered whether we should reach a different result because of the potential effect of our decision on the cost and availability of malpractice insurance. However, no evidence on this issue was presented at trial and we decline to speculate. We do not know the effect of *Quezada* on malpractice insurers and whether they lowered their rates after that

decision. We also have no idea whether *Betts* caused such rates to be increased. On a silent record, speculative assumptions of this nature are simply inappropriate.

We accordingly reject defendant's argument that Holliday is not entitled to $400,000 emotional distress damages caused by his defense counsel's professional negligence.

### PLAINTIFF'S CROSS-APPEAL

Holliday's cross-appeal challenges the court's ruling sustaining the defendants' demurrer without leave to amend to his cause of action for intentional infliction of emotional distress.[9] Holliday claims the court erred in concluding that his cause of action was barred by the one-year statute of limitations of Code of Civil Procedure section 340, subdivision (3).

■ The tort of intentional infliction of emotional distress is not complete when the defendant commits his outrageous acts; "[i]t is not complete until the effect of a defendant's conduct results in plaintiff's *severe* emotional distress." (*Kiseskey* v. *Carpenters' Trust for So. California* (1983) 144 Cal.App.3d 222, 232 [192 Cal.Rptr. 492]; *Murphy* v. *Allstate Ins. Co.* (1978) 83 Cal.App.3d 38, 51 [147 Cal.Rptr. 565].) Here, Holliday's complaint does not allege the date of Jones's wrongful act or when he first suffered compensable injury. Accordingly, the trial court was unable to determine from the face of the complaint whether Holliday's action for intentional infliction of emotional distress was time barred. We are also unable to discern from the record whether the law and motion judge relied on matters which could be judicially noticed in deciding Holliday was legally precluded from suing Jones on a theory of intentional misconduct. Thus there is merit to Jones's argument. We are nonetheless unpersuaded. We say this because of the facts on which Jones bases his argument.

To convince us that Jones's malpractice involved more than merely inattention to his professional responsibilities, Holliday has directed us to several instances of what he describes as Jones's affirmative misconduct, malfeasance, ethical improprieties and bad faith in the context of his backup

---

[9] The parties spend considerable energy discussing whether Holliday's appeal improperly labeled as a "cross-appeal" was timely filed. (The clerk of this court inadvertently labeled Holliday's appeal as a "cross-appeal.") Our decision to reach the merits of his appeal reflects our rejection of defendants' jurisdictional arguments. The court's judgment entered following its statement of decision failed to refer to the cause of action to which demurrers were sustained without leave to amend. Holliday's counsel's later meticulously crafted letter with copies to opposing counsel explained this significant omission. Instead of amending the judgment a separate order of dismissal filed December 14, 1987, was entered. Accordingly we are satisfied that Holliday's timely appeal from that order is properly before us.

argument to support his recovery for emotional distress damages had we decided *Quezada* controlled our decision. Not discussed, but implicit in our opinion in defendants' appeal, is our rejection of this backup argument. In any event, the same acts which Holliday now says are sufficient to support his separate cause of action for intentional infliction of emotional distress were included in his case seeking damages for negligent infliction of emotional distress. Not only was such evidence admitted at trial, but was considered by the court in its award of emotional distress damages. Thus here the record establishes the emotional distress caused by Jones's professional negligence and that resulting from the alleged intentional infliction of emotional distress was based on the same conduct. Because Holliday has already been fully compensated for the emotional distress caused by such conduct he is not entitled to relitigate that issue. To permit him to do so in the circumstances of this case would result in double recovery. We therefore affirm the order sustaining the defendants' demurrer without leave to amend to Holliday's cause of action for intentional infliction of emotional distress.

### DISPOSITION

The judgment is reduced by $300,000, eliminating the award in favor of plaintiff as the guardian of his two minor children. As so modified the judgment is affirmed. The parties to bear their respective costs on this appeal.

Work, J., and Nares, J., concurred.

A petition for a rehearing was denied October 30, 1989, and the petition of defendants and appellants for review by the Supreme Court was denied January 25, 1990.